JAMES P. COKER, DEFENDANT AND APPELLANT, VS. DEWITT C. DAWKINS, PLAINTIFF AND RESPONDENT.

1. Where a fact alleged in a petition or bill in equity is at issue and is testified to by one witness only, and an equally credible witness positively denies the fact or transaction (he being a party to it), and there is no other evidence bearing upon the fact alleged, it is error to find that the fact is proved in favor of complainant.

2. A *bona fide* purchaser of property at a sheriff's sale is protected by the presumption that the judgment of a competent court has been correctly rendered and that the execution in the hands of the officer has been regularly issued. He may fairly presume that the sheriff has acted in the discharge of official duty according to law.

3. At public sales by auction, there being no fraud or unfairness, as soon as the hammer is struck down the bargain is considered as concluded, and the seller has no right afterward to accept other bids nor the buyer to withdraw from the contract.

4. Equity will not set aside a public sale not tainted with fraud or unfairness, and upon the sole ground of inadequacy of price. Property offered for sale by auction is offered to be sold for what it will bring, and unless the inadequacy of price is so unconscionable as to demonstrate some gross imposition or undue influence a court should not annul the sale.

Appeal from the Circuit Court for Jackson county.

This was a proceeding commenced by D. C. Dawkins in the Circuit Court for Jackson county by petition, which was treated by the parties as a complaint under the Code. The original petition appears to have been filed in November, 1869, and was lost, and in November, 1871, a copy was filed under which the subsequent proceedings were had. The petition is as follows:

Your petitioner, DeWitt C. Dawkins, of the county of Duval and State of Florida, respectfully showeth unto your Honor that he is and was prior to the first Monday in March, A. D. 1869, the lawful owner of one undivided half interest in certain valuable real estate in the town of Marianna, county of Jackson and State of Florida, known and described as lots number thirty-two (32) and thirty-five (35) in the plan of said town.

Your petitioner further represents that on the said first Monday in March, 1869, the same being the first day of the month, one John W. King, then sheriff of said county, exposed said property to sale, and did sell the same to the highest bidder or pretended highest bidder, to satisfy certain executions in his hands against your petitioner and others; one in favor of Marmaduke B. Pender, and another in favor of Martha Pittman, and the said sheriff did then and there sell, or pretended to sell, the said property of your petitioner for said purpose to James P. Coker, for the bid and sum of four hundred and seventy-five (475) dollars, and subsequently made and executed his official deed to said Coker, conveying to him the said property of your petitioner.

Your petitioner further represents and charges that the said sale was fraudulent, wrong and oppressive upon your petitioner, and that all of the aforesaid persons, to wit: John W. King, sheriff, James P. Coker, Marmaduke B.

Pender and Martha Pittman were parties to said fraud and oppression, as the following facts will show, to wit:

1. John W. King, the said sheriff, advertised the said property, if he advertised it all, as I am informed and believe in a newspaper printed at Pensacola, 150 miles or more west and distant from Marianna, where said property was sold, and did not endorse his levy on said executions, or either of them, until the day of sale or afterwards, though dated January 1, 1869, so that your petitioner knew nothing of said advertisements as he at the time resided at least 200 miles east from Marianna, except by mere accident through the instrumentality of a friend, who informed him by letter of the mysterious working too late for equitable remedy, which he would have sought.

2. The execution in favor of Martha Pittman is based upon a "judgment by default" obtained against your petitioner and others, in the Circuit Court of said Jackson county, on the 26th day of October, A. D. 1861, and after the plaintiff in execution, the said Martha Pittman, had on the 1st day of April, A. D. 1861, agreed with your petitioner to dismiss the suit, on which said judgment is based, upon the payment of forty dollars, which was then paid and placed as a credit upon the cause of action by her agent, Thomas M. White, and your petitioner relied upon that promise and agreement, and set up no defence which he otherwise would have done.

3. On the said day of sale, and before the said sale took place, your petitioner offered to said sheriff his affidavit to the effect that the said execution in favor of Martha Pittman was illegally obtained, with a proper bond accompanying said affidavit; but the said sheriff, under the advice and apparent control or influence of the attorney for the plaintiffs in execution then and there present, refused to receive said affidavit and bond, or even to look at it, and it

was impossible under the then existing circumstances to apply for or obtain an injunction to prevent the wrong and injury consequent upon such unjust proceedings.

4. The said property of your petitioner then and there sold for said purpose was reasonably worth at least fifteen hundred dollars and an annual rental value of four hundred and fifty dollars, and it is now worth that much or more.

5. James F. McClellan, the then acting attorney for the several plaintiffs in said executions, I am informed and believe told one or more persons that the said property would not be sold on that day, which had the effect to keep him or them away from said sale, who otherwise would have been present and bid much more for said property than it sold for if permitted to do so.

6. Two different persons, to wit: Ashley B. Hamilton and the said James P. Coker, being then and there present at said sale, both claimed the said bid of four hundred and seventy-five dollars at the same time, and both of said persons claimed the same bid aloud and within the knowledge and hearing of the said sheriff and other persons present, and the said Hamilton then and there aloud and within the hearing and knowledge of the said sheriff proposed that as two persons claimed to have made the said same bid at the same time he would raise the bid to four hundred and eighty dollars, but the said Coker fraudulently and wrongfully persisted that he had bought the property for the said bid, and the said sheriff fraudulently and wrongfully discriminated in favor of the said Coker and against said Hamilton, and greatly to the damage and injury of your petitioner, and the said attorney for the said plaintiffs in execution was present and sanctioned the said fraudulent proceedings.

7. The bidding at said sale was not made aloud or *viva voce*, but for the most part by winking or nodding or other silent

signals, and when the said bid of four hundred and seventy-five dollars was cried or announced by the said sheriff a gentleman then and there present, and in a tone of voice loud enough to be distinctly heard by said sheriff and other persons, exclaimed " by two," but the said sheriff paid no attention to said exclamation, but quickly knocked off the property to said Coker for said bid and did not dwell a reasonable length of time thereon, which clearly indicates a fraudulent combination between said parties against your petitioner.

8. Your petitioner, after said sale, and on the same day, notified the said sheriff and said James P. Coker that if they persisted in the consummation of said fraudulent sale your petitioner would institute legal proceedings to set aside said sale and for damages for the wrong, but they disregarded said notice, and the said sheriff on the —— day of March, A. D. 1869, made and executed his official deed conveying said property to said Coker, which the said Coker accepted and took possession of said property thereunder against the consent of your petitioner, and still retain possession thereof against his consent.

Your petitioner further represents that he has been greatly inconvenienced in consequence of said wrongful proceedings and has sustained a loss and damages not less than fifteen hundred dollars, exclusive of the value of said property.

Whereupon your petitioner prays your Honor that by order, judgment or decree of this honorable court the said sheriff's sale be set aside; that the said sheriff's deed to said Coker be declared null and void; that the said judgment and execution in favor of said Martha Pittman be declared void; that your petitioner recover possession of said property sold by said sheriff to said Coker, and damages in the sum of fifteen hundred dollars, with interest from the date

10

of this petition, and such other and further relief as to your Honor may seem just, and your petitioner will ever pray, &c.

No process appears to have been issued or notice served on any of the persons named in the petition, but in November, 1873, an answer was filed by James P. Coker in his own behalf.

The answer of Coker is as follows :

1st. He admits that Dawkins owned the property in question prior to said sale.

2d. That said property was sold to the highest bidder by the sheriff under certain executions held by him against petitioner, Dawkins, as alleged, and was bought by respondent for $475.

3d. He denies positively any and all fraud in said sale and purchase by himself or any other person within his knowledge or belief.

4th. He is informed and believes the sale was advertised in Pensacola, and that the law so required ; has no knowledge of how judgment was obtained, and knew nothing of Dawkins offering sheriff affidavit of the illegality of such execution.

5th. Denies that property sold was worth $1,500.

6th. Denies, upon information and belief, that J. F. Mc-Clellan told any one that the property would not be sold on that day.

7th. That he purchased said property at the said sheriff's sale for $475 fairly and free from any fraud. That Hamilton had been bidding, but, at the time, was not paying attention ; that sheriff cried the bid deliberately and gave fair warning that if bid was not raised the property would be knocked down, and announcing in reply to a question on the subject that it was Colonel Coker's bid before he knocked it down ; did object to putting up property a second time as he had purchased it fairly.

8th. Dawkins did not notify him as alleged in petition he would institute legal proceedings to set aside the sale.

9th. That since his purchase he has expended about $600 on said property ; denies that Dawkins has been damaged as alleged.

The petitioner filed a demurrer and replication to respondent's answer, and after the taking of testimony upon the issues made the court, on 21st March, 1876, rendered its decree that the sale ought to be set aside, and appointing a referee to state an account of rents received by Coker ; what he had expended for repairs, purchase money, &c. This decree could not, from its items, be made effective until the coming in and confirmation of the referee's report, and afterwards, in June, 1882, the court confirming the referee's report in part made final decree, that Coker pay the petitioner $105 due him according to the report, setting aside said sale, declaring the said sheriff's deed null and void, and delivering the property to petitioner ; from which decree the respondent has taken this appeal.

*J. F. McClellan* and *J. E. Yonge* for Appellant.

*J. T. Bernard* and *D. L. McKinnon* for Respondent.

I. As to the first assignment of error. The court below decreed that Martha Pittman received from the petitioner the sum of forty dollars, and in consideration thereof agreed to discontinue said action. This conclusion says the appellant is not justified by any of the testimony. The petitioner, under oath, stated the above fact. He reiterated it in his testimony. A party cannot be charged against his own denial, in his answer under oath, on the testimony of only a single witness. It must, to warrant a decree, be contradicted *by at least two or three witnesses*, or by written documents. White vs. Walker, 5 Fla., 479, and 2 Story Eq.

Jur., 1528 ; Greenl. 1, §260 ; Carr vs. Thomas and Drum-
right, 18 Fla., 736 ; and various authorities cited on page
491 in White vs. Walker. The statements of petitioner were
not rebutted even by one witness ; it was not even traversed.
It is true that the agent of Mrs. Pittman stated that he
had no recollection of having but one transaction with the
petitioner, but he was questioned relative to. a subsequent
one, and not the transaction under consideration. Mrs. Pitt-
man was not examined and the sworn statement was not
rebutted by a single witness ; and even the evidence of *one*
is not sufficient.

II. When a sale is made to satisfy two executions, and
one of them is void, the whole sale is void, especially when
the judgment creditors of the valid execution and the pur-
chaser had notice thereof. Knight vs. Applegate Heirs, 3
Mon., 336 ; also 7 J. J. Marshall, 625. The evidence is
that the petitioner made affidavit on the day of sale of the
illegality of one of the executions, and offered to give bond
for a stay, to test the illegality. This was done *publicly*, and
was due notice to all the the parties, besides openly protest-
ing against the sale.

III. The sale was made upon an execution issued upon a
judgment obtained in violation of an express agreement to
the contrary, and without the knowledge of the petitioner.
This is sustained in reply to the first assignment of error,
and the authorities there cited are applicable to this. The
sworn petition and the testimony of the petitioner must be
rebutted by two witnesses. The court below in its opinion
gives its reasons for coming to this conclusion.

IV. The defendant's property cannot be needlessly sacri-
ficed. It is in testimony that Hamilton offered to give
more after the sheriff had declared Coker to be the highest
bidder. Inadequacy of price and other considerations will
set aside a sale. Ryman vs. Nicholson, 2 Yeates, 516 ;

Nesbitt vs. Dullman, 7 Gill. and John., 512 ; 3 Marsh, 515 ; 3 Munro, 373 ; 3 Litt., 128 ; 7 Munro, 617 ; Mobile Cotton Brokers vs. Moore & Magee, 9 Porter, 679.

V. The fitth and sixth assignment of errors are answered in the preceding. If the execution was illegal the sale was void as shown in II. If the sale was void then the court had power to order that the deed made by the sheriff to Coker should be cancelled and delivered up by the said Coker. To order this done was the prerogative of the court, which under the code had the powers of a court of chancery. Story Eq., Vol. 2, §692 to 703.

THE CHIEF JUSTICE delivered the opinion of the court.

The appellant assigns for error the finding of the court, that petitioner had, before judgment was recovered by Mrs. Pittman, paid her or her agent forty dollars, in considera- tion of which she agreed to dismiss the suit she had com- menced against him, and that for her omission to dismiss the suit and taking judgment, the execution was illegal and void.

Assuming that the facts alleged in the petition are mate- rial in this proceeding against the purchaser to set aside the sale and the deed, and the material facts being at issue by the answer, we will examine the testimony.

Mr. Dawkins, petitioner, testifies as follows : " The judg- ment in favor of Mrs. Pittman was obtained in a suit brought against the petitioner and one or more co-defendants, John E. Moseley being one of them. After said suit was brought the said Moseley handed me forty dollars to be paid to Mrs. Pittman upon the condition, solely, that said suit be dismissed. I saw Mr. T. M. White, who, acting as agent for Mrs. Pittman, received the forty dollars and placed the same as a credit on the cause of action in said

suit, expressly agreeing to dismiss said suit, and expressly promising to instruct Mr. Jesse Norwood, the plaintiff's attorney therein, to dismiss said suit. This was before the return day. Mrs. Pittman acquiesced in the transaction. There was no appearance in consequence of said agreement and judgment by default was taken, of which the petitioner had no knowledge or information until he had notice of the said sheriff's sale. The said suit was not defended, presuming it was dismissed."

This is all the testimony on the part of petitioner upon this branch of the case.

On the part of the appellant, Coker, Thomas M. White, being sworn, was asked, "Did or did not D. C. Dawkins, in 1863 or 1864, pay you any money as the agent of Martha Pittman, upon a note then in suit in the Circuit Court of Jackson county, against D. C. Dawkins, Moseley and others? If yea, state if you, as the agent of Martha Pittman, consented and agreed to dismiss said suit? Did you, at any time, agree with D. C. Dawkins to dismiss a suit pending in the Circuit Court of Jackson county by Martha Pittman against said Dawkins and others, or where said Dawkins was a party defendant"?

Answer: "I do not remember that he did. Mrs. Pittman hired to Dawkins about that time a negro, and the negro was taken before the year was out, and this I believe was allowed as a credit on the note, and this is the only transaction that I ever had with Dawkins relative to Mrs. Pittman's business. I made no agreement as I recollect. I did not agree to dismiss any suit, having no authority to do so."

There was no cross-examination of Mr. White on this subject, and this is the whole testimony upon the point.

Neither the execution nor the judgment against the petitioner in favor of Mrs. Myrick, nor the note or other cause

of action which was the basis of the judgment, were in evidence, nor the amount of either of them shown in any way. We infer that the claim which entered into the judgment was more than forty dollars, because Mr. Dawkins testifies that the forty dollars was "placed as a *credit on the cause of action* in that suit." Mr. Dawkins does not show that the forty dollars so claimed to have been paid was not credited to him in entering the judgment, nor that the judgment was for any sum of money not due from him; nor does he say that he had any defence to the action. In the absence of proof to the contrary we must presume that the judgment was regular and in due form, and that the execution was regularly issued upon the judgment.

After eight or ten years from the entry of the judgment, when the execution is about to be enforced, the defendant, who is an attorney in the same court, is surprised to find that a judgment was entered against him, and now on filing his petition to set aside the sale upon the ground of the alleged agreement not to enter a judgment, and after twelve years of litigation, under the petition, fails to prove the agreement except by the testimony of one witness who is positively contradicted by the person with whom it is alleged the agreement was made, and there is no testimony whatever to show even that he was the agent of Mrs. Pittman for any such purpose. The allegation, therefore, that the judgment was entered in violation of the alleged agreement is not proved, and it was error to find otherwise.

In the petition it is alleged that on the day of the sale, and before it was made, the petitioner tendered to the sheriff an affidavit that the execution "was illegally obtained, with a proper bond accompanying said affidavit," to which the sheriff paid no attention and proceeded with the sale. This is supposed to have reference to the provisions of the act of 1834, (McClellan, p. 524,) which authorizes the party

to tender to the sheriff an affidavit of illegality of an execution, "stating the cause of such illegality," and giving bond, &c. Whether the affidavit and bond were such as the law requires is not shown, as the record does not give a copy, nor are the contents stated. We cannot, therefore, say that it was the duty of the sheriff to stop proceedings under the execution.

A *bona fide* purchaser at a sheriff's sale is protected by the presumption that the judgment of a competent court of record has been correctly rendered and that the execution in the hands of the officer has been regularly issued. He may fairly presume that the sheriff in the discharge of his duties has acted according to law. Givan vs. Doe, 5 Blackf., 260 ; Coriell vs. Ham., 4 Greene, Iowa, 455 ; and see authorities cited by the court in Newton's Heirs vs. State Bank, 22 Ark., 19, 28.

It is further alleged for error that the court found and decreed that the property was not fairly sold to Coker.

The testimony shows that the petitioner and Coker and a considerable number of other persons were present at the sale, that the property was offered for sale and Coker and one Hamilton bid for it. A bid was finally made of $475, and after crying this bid for some time Coker inquired whether that was his bid, and it was announced by the sheriff in a loud voice that it was Coker's bid ; Hamilton, who had been conferring aside with Dawkins, then inquired whose bid it was, and the sheriff informed him it was Colonel Coker's bid. After crying the bid for some time longer, and no other bid being made, the sheriff struck down the hammer, (having first announced " going," " last call," &c.,) and proclaimed the property sold to Colonel Coker. Immediately Hamilton said he thought it was his own bid and demanded that the bidding be resumed, offering to bid five dollars more ; but Coker objected, claiming

the property, and stating his readiness to pay the money. After some parleying the sheriff concluded he had no right to open the sale and so declared. He then executed a deed to Coker and received the money. There is testimony that when the $475 bid was made some person said " by two," or " $475 by two," but it does not appear that the sheriff heard it, nor does it appear clearly that Hamilton claimed the bid until after the property was knocked down to Coker, although he was informed before the close of the sale that it was Coker's bid.

This is the effect of all the testimony on this subject as we understand it.

We fail to discover any evidence of partisanship or unfairness in conducting the sale. If Hamilton bid the same amount as Coker he should have claimed the bid or raised it when informed that it was Coker's bid and before the sale to Coker was cried by the sheriff, as it appears he had abundant opportunity to do so. His offer afterwards to raise the bid five dollars was not of sufficient importance to raise a presumption of unfairness on the part of the sheriff. Neither was there anything in the conduct of Colonel Coker showing any unfairness on his part or tending to prevent a fair sale or to prevent competition in bidding. For aught that appears here he is a *bona fide* purchaser.

The sale was completed so far as the bidding was concerned, and if there was no unfairness on the part of the sheriff or the parties or bidders, the purchaser had a right to insist upon the bargain. "As soon as the hammer is struck down the bargain is considered as concluded, and the seller has no right afterwards to accept a higher bid, nor the buyer to withdraw from the contract." Blossom vs. R. R. Co.; 3 Wallace, 196, 206; citing Story on Sales, §461 ; Rutledge vs. Grant, 4 Bingham, 653 ; Cook vs. Oxley, 3 Tenn., 654 ; Adams vs. Linsdell, 1 B. & Ald., 681.

It is alleged in the petition that the sale was advertised at Pensacola, two hundred miles from place of sale. The defendant, Coker, answers that he is informed that this is true, but says that the law required the sale to be advertised in a paper printed at Pensacola. There is no proof on the subject. The petitioner was present at the sale and made no objection to it on the ground of want or regularity of notice.

It is charged in petition that persons were deterred from attending and bidding at the sale by the fact that Colonel McClellan, the attorney for plaintiffs in the executions, informed them on the morning of the sale day that there would be no sale. It is but just to Colonel McClellan to give his testimony on this matter. He says that on the morning of the sale Mr. Dawkins told him that he had arranged the executions of Barnett, Pender and Myrick, and that there would be no sale, and Colonel McClellan mentioned this to some persons. "An hour later he ascertained that this statement of Dawkins was incorrect. I met him and told him he was laboring under a mistake as to having arranged the executions. He then pulled out an affidavit and bond in regard to the Pittman execution." If any were kept away from the sale from the course stated it was not the fault of Colonel McClellan.

Another ground on which the sale was set aside by the Chancellor was the inadequacy of price for which the lots were sold.

The testimony of various witnesses is that the property was worth $750 to $1300, and that the selling value of it was much affected by the facts that the property was much out of repair, and that there was a legal controversy pending in regard to the title. The attitude of Mr. Dawkins also in forbidding the sale and threatening legal proceed-

ings to set it aside had some influence in the opinion of some witnesses.

"Inadequacy of consideration is not, of itself, a distinct principle of relief in equity. The common law knows no such principle. The consideration, be it more or less, supports the contract. Common sense knows no such principle. The value of a thing is what it will produce, and admits no precise standard. * * * If courts of equity were to unravel all these transactions they would throw everything into confusion and set afloat the contracts of mankind. Such a consequence would, of itself, be sufficient to show the inconvenience and impracticability, if not the injustice, of adopting the doctrine that mere inadequacy of consideration should form a distinct ground for relief." 1 Story's Eq. Jur., §245; Erwin vs. Parham, 12 How., U. S., 197, 206; White vs. Duncan, 7 Ves. Jr., 34; Livingston vs. Byrne, 11 Johns., 557, 566; Hardy vs. Heard, 15 Ark., 189; Williamson vs. Dale, 2 Johns. Ch., 272; Roe vs. Ross, 2 Ind., 99; Newton's Heirs vs. Bank, 22 Ark., 19.

In Livingston vs. Byrne, Yates, J., says: A sale made at auction and under process of law ought not to be invalidated for mere inadequacy of price, without other circumstances to justify it. It is necessary to secure proper confidence on the part of the purchasers at sales of this description, and to render titles, if fairly obtained, certain and not liable to be impeached by various opinions as to value.

The rule that a sale will be set aside, or confirmation of it by a specific performance refused, on account that the inadequacy of price was so great as to give the character of hardship, unreasonableness and inequality applies only to private sales, and not to sales at public auction. Benton vs. Shreeve, 4 Ind., 66, 70.

Relying upon the foregoing and other authorities we deem it to be the established doctrine that equity will not

set aside a public sale, not tainted with fraud or unfairness, and upon the sole ground of inadequacy of price. In the language of Lord Eldon in White vs. Damon, 7 Ves., 35, " The plaintiff is not affected with anything beyond suspicion ; the sale taking place at an auction, without any fraud, surprise or mistake : the estate being offered at any price he would bid ; and without more he became the purchaser. I am inclined to say, that a sale by auction, there being no fraud, surprise, &c., cannot be set aside for mere inadequacy of price." In that case the property worth over £2,000 had been sold for about £1,000. And see 10 Ves. Jr., 474.

Still in cases of inadequacy of price it has been said that the inadequacy may be so unconscionable as to *demonstrate* some gross imposition or undue influence, and in such cases courts of equity ought to interfere upon the satisfactory ground of fraud. 1 Story's Eq. Jur., §246.

This is not such a case. We have examined all the authorities cited by respondent in his brief and many others, but we find no case where the rule is laid down otherwise than as above stated by Lord Eldon, and followed by the American courts.

The final decree is based upon the interlocutory findings of fact and application of law by the court in 1876. Assuming that finding and judgment to be correct the final decree of 1882, setting aside the sale, was its natural sequence. Finding, however, that the interlocutory decree was wrong the final decree must be reversed.

The final decree and the interlocutory decree are reversed, and the cause remanded with directions that the petition upon which these proceedings have been had be dismissed with costs.