STATE v. BOARD OF SCHOOL LAND COM'RS.
(No. 970; Decided September 1, 1920; 191 Pac. 1073)

PUBLIC LAND—SALE OF STATE LANDS—AUCTION AND AUCTIONEER—BIDS—HOW MADE—ESTOPPEL—WRITTEN GUARANTY AS BID FOR PUBLIC LAND—ACCEPTANCE OF BID FOR PUBLIC LAND—RIGHTS ACQUIRED BY A BIDDER AT FIRST SALE NOT WAIVED BY BIDDING AT SECOND SALE.

1. Where an applicant for the selection and sale of land as indemnity school land, guaranteed in writing to bid a specified amount and deposited a portion of such amount, and the lands were subsequently offered for sale at public auction at the time and place as advertised, and in the absence of a verbal bid, were declared sold to applicant at the price specified in his written guaranty, the sale was valid, notwithstanding applicant's failure to ap-

pear and make a verbal bid, his written guaranty constituting a bid.

2.  A bid may be made orally or in writing, by a wink or nod, or by any mode by which the bidder signifies his willingness and intention to give a particular price.

3.  State officers having construed a written guaranty to bid a specified amount at a public sale of school lands as a bid, will not be heard to insist upon a different construction in an action involving the validity of a sale to applicant, who had, in writing, guaranteed to bid a specified amount, but who had made no verbal bid at the sale.

4.  Acceptance of a bid is denoted by the fall of the hammer, or by any other audible or visible means signifying to the bidder that he is entitled to the property on paying the amount of his bid according to the terms of the sale. Once a bid has been accepted, the parties occupy the same relation toward each other as exists between promisor and promisee in an executory contract of sale conventionally made.

5.  Where school land being sold at public auction was declared sold to applicant, who had made a written bid prior to the sale, the applicant by bidding at a second attempted sale of the same lands, without knowledge of the first sale, did not waive his rights under the first sale.

Original proceedings in mandamus on the relation of E. L. Fitch against the State Board of School Land Commissioners of the State of Wyoming, and another to require the issuance of a certificate of purchase for state school lands.

*Don L. Wakeman and R. R. Ryan,* for Relator.

Relator guaranteed in writing to bid a specified amount for the land which was advertised for sale; on the day of the sale no oral bids being offered for the land, it was declared sold to relator at the price which he had guaranteed to bid; later in the day the auctioneer reoffered the lands in question and several oral bids were made therefor, among them a bid by relator; it is the contention of the relator that the first sale was valid and that the subsequent reoffer of the lands and attempted resale thereof

was void; the statutes prescribe the procedure required for the sale of state lands, Sec. 627-637 C. S. 1910; relator is entitled to a certificate of purchase under the first sale; the sale was regular and valid; the bid was made in writing; (Warehime v. Graff, 83 Md. 98); the absence of the person who made the offer at the time the sale was cried, is no ground upon which the offerer may repudiate the contract. (Tyree v. Williams, 6 Am. Dec. 663); when the bid is accepted the contract is complete; (Collins v. Demarest 45 La. Amm. 108); there must be a bidder; the property must be stricken off and the purchaser must complete his purchase to constitute a sale at auction. (Sherwood v. Read, 7 Hill 431); any audible or visible announcement by the auctioneer is sufficient; (State v. Bank, 84 Md. 321; 33 Atl. 889); as soon as the hammer is struck, the bargain is concluded. (Coker v. Dawkins, 20 Fla. 141). In the present case the sale was complete; rights acquired by relator at the first sale were not waived by his bidding at the second sale when he did so without knowledge of the first sale.

*W. L. Walls, Attorney General,* for Respondents.

At the time the sale was cried, the relator and another who had made application for the sale were absent; the representative of the state decreed the lands sold to the relator on his guaranty to bid not less than $10 per acre; while the land sale was still in progress at the same time and place and upon the return of relator and the other applicant, the state representative again offered the lands for sale, and both made verbal bids, the relator's bid of $30 per acre being the highest and best; said lands were sold to him; this sale was confirmed by the land board; relator now seeks to have a sale certificate issued to him under the sale, first made to him of the lands at $10 per acre during his absence; the powers and duties of the state school land board are fixed by the constitution and statutes, Section 13, Art. VII, Section 602-606, C. S. 1910. A

guaranty to bid and the actual making of a bid are clearly distinguishable; relator did in fact make a verbal bid of $30 per acre for the land, which was sold to him at that price and this sale was confirmed by the Land Board; the first sale was not a sale at public auction; relator is not entitled to the writ nor to any relief whatsoever.

*Don L. Wakeman and R. R. Ryan,* in Reply.

A bid is an offer to purchase; (U. S. v. Vestel, 12 Fed. 59; Payne v. Cave, 3 Term. 149; Eppes v. R. R. Co., 35 Ala. 56); relator's application was accompanied by a cash deposit; it was shown by the testimony of the state's representative that the greater portion of the state lands are sold upon guaranteed bids as was done in the present case; it was admitted by the state representative that the second sale was a mistake; the State Board of Land Commissioners is not vested with judicial powers; the first sale was regular and valid in all respects and a certificate should issue.

BEARD, Chief Justice.

In this case, on the petition of the relator, an alternative writ of mandamus was issued to the respondents requiring them to issue to the realtor a certificate of purchase for the E. ½ of Section 1, Township 52, North of Range 76, situated in Campbell County, State of Wyoming, at the sale price therefor of $10 per acre, or to show cause why they refuse to do so. The respondents filed their answer to said petition, to which relator filed a reply. On the issues thus joined, written stipulations as to certain facts were entered into by the parties, and the balance of the evidence was taken in writing by a commissioner appointed for that purpose.

There are but few controverted questions of fact in the case. About February 1, 1915, the relator applied in writing to the Commissioner of Public Lands to have the lands above described selected as State or Indemnity

School Lands, and for the sale of the same, and at the same time the relator agreed in said application to bid at a public sale of said lands the sum of ten dollars per acre therefor, and, as a guaranty that he would do so, deposited with the State Land Commissioner one dollar per acre, or a total of $323.47. Said written guarantee being in the words and figures following: "I enclose herewith a deposit of $1.00 upon each acre of said land, said deposit to be held as a guarantee that I will bid $10.00 an acre for the land when same is offered for sale." On August 22, 1918, the relator was advised that the State had become the owner of said lands, and that it would offer the same for sale at public auction to the highest bidder; and at the same time the relator was requested by the State Land Commissioner to deposit with him the further sum of twenty dollars to cover the cost of advertising said lands, providing he, the relator, still desired said lands sold under his application of February 1, 1915. The land was, on September 9, 1918, ordered sold by the State Board of Land Commissioners, and thereupon, on September 10, 1918, the relator informed the State Land Commissioner, by letter, that he still desired the land sold under said application, and then deposited with said Commissioner the said sum of $20. The said lands, together with numerous other tracts of land, were duly advertised for sale, said notice containing the following, to-wit: "Notice is hereby given that pursuant to law and at the order of the State Board of School Land Commissioners, the Commissioner of Public Lands will, on the 6th day of December, 1918, at nine o'clock a. m. at the front door of the Court House in the city of Gillette, County of Campbell, State of Wyoming, offer for sale at public auction and sell to the highest and best bidder, the following described school lands." (Here follows a description of the various parcels of land including the tract involved in this action). Said notice also contained the following: "The State

Board of School Land Commissioners reserves the right to reject any and all bids offered at the said sale.'' The sale was held and conducted, at the time and place designated in the notice, by the Deputy Commissioner of Public Lands who acted as auctioneer. Thus far there is no dispute between the parties. The Deputy Commissioner who conducted the sale testified that prior to the commencement of the sale, ''having been requested to put up a number of pieces out of order in the notice of sale, in order that some of the parties might get away from town, I took the sales out of their regular order. There would be two bidders that I knew of on the east half of section one, township fifty-two, range seventy-six, an agent of Mr. Johnson of Sheridan having spoken to me regarding the procedure of receiving bids, prior to the hour of sale. Both Mr. Fitch and the agent of Mr. Johnson were present at the sale but inadvertently I took the sale of Mr. Fitch and offered it while both parties were absent from the room, and receiving no bids and supposing both parties to be present I declared the land sold to Mr. Fitch subject to the approval of the State Board of School Land Commissioners.'' She further testified on cross-examination that she did not know Mr. Johnson, or whether or not he was present at that time. That the land was sold to relator for $10.00 per acre on his application and deposit without any verbal bid at the time. That at the same sale another tract of land was sold to him in his absence in the same manner. That a large portion of the land sales throughout the state are made on the application to purchase and a guarantee deposit without the receipt of any other bid at the sale, and that the written application and deposit is considered a bid, and a sale made on that if there are no other bids. That later during the sale, Mr. Fitch and the agent of Mr. Johnson being present, she again offered this land for sale, and as we understand the evidence Johnson's agent and relator were

competitive bidders until the land was again struck off to relator at $30.00 per acre. That she did not at the time she offered the land the second time, or prior thereto, inform the relator that the land had been earlier in the day, declared sold to him for $10.00 per acre. That she made a full report of all the facts to the Board. The relator testified that he was not present at the time of the first sale and did not learn of it until after the second sale. That he then claimed under the first sale, but on the demand of the Deputy Commissioner, and, under protest, paid to her the initial payment of 10% of the bid of $30.00 per acre; that he told her he did not think it was right, and she said he would have to pay it; that she had sold it for that much money and she would have to require him to make that payment and that if he had any recourse it would be from the Board. Another witness testified that he was present when the land was first sold, and that relator was not then present, and that the land was then sold to relator at $10.00 per acre. That he was present when relator asked the auctioneer about the double sale, and that she admitted the second sale was a mistake. That the Mr. Johnson, above mentioned, was present at the first sale. Another witness testified that he was present during the entire course of the sale. That this land was sold twice. The first time early, about the third tract; and the last time it was sold in the regular order of the advertisement. There were no bids the first time and the auctioneer declared it sold to the applicant at $10.00 per acre. That relator was not present at the time of the first sale. That Johnson was present during the entire sale. That when there were no bids, other than the guaranteed bid, the lands were declared sold to applicant.

The only controversy in the case is whether or not the first transaction constituted a valid sale of the land to the relator. If it did, the second attempted sale was without authority and void.

It is contended by the Attorney General, for respondents, that relator failed to make good his guarantee to bid $10.00 per acre for the land at the first sale, and hence there was no bid at that time and could be no sale. But we do not agree with that contention. A bid may be made orally, or in writing, by a wink or a nod, or by any mode by which the bidder signifies his willingness and intention to give a particular price. (2 R. C. L. 1125); or by words spoken privately to the auctioneer. (Millingar v. Daly 56 Pa. St. 245;) or by letter, (Tyree v. Williams, 3 Bibb, 365; 6 Am. Dec. 663; 6 C. J. 829). In the last cited case the sale was by executors under the terms of a will; and a few days before the sale Jordan (the bidder) informed the executors by letter the price he would give for the property. His bid being the highest the property was sold to him. The court said: "It is not necessary that a person should be present at an auction to become a purchaser; he may, as Jordan did in this case, make his bid by letter. As his bid was the highest, and the lot was in fact exposed to public sale, he may well be considered the purchaser at the sale." In the present case, the relator not only had expressed in writing his willingness to pay $10.00 per acre for the land, but also guaranteed to bid that amount at the sale, and had actually deposited the percentage of that amount required in such cases with the Commissioner. It further appears by the respondent's own evidence that not only in this instance but also in such sales throughout the state generally the state officers have regarded and acted upon the guarantee of the applicant as a bid. Having placed that construction upon the language contained in the guarantee, they should not be heard to here insist upon a different construction of it. The land was offered at public auction at the time and place advertised, the bid was accepted, there were no other bids, and the land was declared by the auctioneer sold to relator for $10.00 per acre. "Acceptance of a bid

is denoted by the fall of the hammer or by any other audible or visible means signifying to the bidder that he is entitled to the property on paying the amount of his bid according to the terms of the sale. Once a bid has been accepted, the parties occupy the same relation toward each other as exists between promisor and promisee in an executory contract of sale conventionally made. Thereafter, as a rule, the seller has no right to accept a higher bid, nor may the buyer withdraw his bid'' (2 R. C. L. 1126; Coker v. Dawkins, 20 Fla. 141-153; State v. Hoboken Bank, 84 Md. 325-351; 35 Atl. 889; Sherwood v. Read, 7 Hill (N. Y.) 439). We are clearly of the opinion that the first sale was valid, and that the relator is entitled to a certificate of purchase of the land at $10.00 per acre upon complying with the terms and conditions contained in the advertisement. The second sale being unauthorized and relator having had no knowledge of the first when he bid at the second attempted sale, did not waive his rights under the first and only valid sale. A peremptory writ of mandamus will issue requiring the respondents to issue and deliver to the relator a certificate of purchase for said lands in accordance with the views herein expressed.

*Writ granted.*

POTTER, J, and BLYDENBURGH, J. J., concur.