(No. 5949.   December 9, 1933.)

HERMAN KOCH and MARY KOCH, Husband and Wife, Respondents, v. ANDREW GLENN and MARY E. GLENN, Husband and Wife, Appellants

[27 Pac. (2d) 870.]

Frank L. Stephan and J. H. Blandford, for Appellants.

J. W. Porter and O. W. Witham, for Respondents.

BUDGE, C. J.—On October 21, 1927, appellants entered into a contract to purchase from respondents certain real estate, paying $1,000 at the date of the purchase and agreeing to pay $1,000 each February thereafter, together with interest, until the total sum of $32,000 had been paid. Appellants, after making a number of payments on principal and certain payments of interest, defaulted and on the first day

of February, 1932, moved off the premises, breached and abandoned the contract. On February 3, 1932, respondents took possession and on February 4, 1932, appellants leased the premises to one Mason who took possession on February 5, 1932. Thereafter respondents instituted the present action against appellants to recover damages. The action was tried before the court and a jury and a verdict was rendered in favor of respondents. Appellants made a motion for a judgment *non obstante veredicto* and also made a motion for a new trial, both of which were denied, whereupon appellants prosecuted this appeal from the judgment and from the order denying the motions above mentioned. The facts are enlarged upon in the dissenting opinion and in view of the disposition to be made of this appeal we have concluded that it is unnecessary to make a more lengthy statement of the facts.

Appellants have specified numerous assignments of error that need not be set out *in haec verba* for the reason that the first error assigned presents the controlling question, namely: whether ''The verdict. of the jury is against the law and the evidence.'' If the trial court erred in its application of the law to the facts the judgment must be reversed. Whether the court did so err depends upon the interpretation and construction of the terms of the contract entered into between the parties. The trial court instructed the jury that: ''under the law plaintiffs are entitled to recover in this action. The only matter left before you for determination is the amount of the damages suffered by plaintiffs.''

The court then instructed the jury that: ''you will assess the plaintiffs' damages at the difference between the contract price and the value of the premises at the time of the abandonment thereof by the defendants and re-entry by the plaintiffs, less what has been paid by the defendants. In other words, the measure of plaintiffs' damages would be the difference between the balance remaining unpaid under the terms of the contract and the reasonable market value of the premises, at the time of the abandonment.''

The material portion of the contract provides:

"Time is of the essence of this contract, and in case said buyer shall refuse or neglect to pay said installments of purchase price promptly as agreed herein, it shall be optional with the said seller to declare this contract forfeited, and upon the making of such declaration all right of the said buyer to complete said purchase or to continue in possession of said premises shall immediately terminate, and said buyer shall also forfeit all moneys paid to the said seller as purchase money, unless said seller shall otherwise elect.

"The said buyer shall be entitled to the possession of said premises so long as the terms of this agreement are complied with, but a failure to comply with the same shall, at the option of the said seller, terminate the right of possession, and the said buyer shall surrender the possession of said land and improvements thereon, if any, to the said seller, and any money paid by the said buyer by virtue of this agreement shall be retained and shall remain the property of said seller, as liquidated damages, and said buyer shall thenceforth be regarded as a tenant holding over after the expiration of his term and shall be liable to dispossession under the law relative to forcible entry and detainer."

The vendors, upon breach of the contract by the vendees, had three remedies: (1) The vendors might have mutually rescinded, which would terminate the contract; (2) the vendors could sue for specific performance, and have judgment for unpaid instalments past and future when due; or (3) the vendors could sue for damages, which is the case here, and their damages would be the difference between the contract price and the market value of the premises at the time of the breach, unless by the contract the parties have otherwise stipulated. The clauses in this contract relating to liquidated damages are probably not self-executing, that is, the contract requires an election on the part of the vendors. Undoubtedly the elections the vendors had were those enumerated above. A differentiation must be made between rescission on the part of the vendors and

election or the exercise of the option of the vendors. As is pointed out in the following cases, a clause such as is contained in the contract herein—not self-executing, but optional with the vendors—while it may ordinarily require a notice of election on the part of the vendors, does not require a notice of election when the vendees specifically abandon the contract. In any event the bringing of suit for damages constitutes the election of the option, which is not a rescission of the contract by the vendors. (*Epplett v. Empire Investment Co.*, 99 Or. 533, 194 Pac. 461, 700; *Kemmerer v. Title & Trust Co.*, 90 Or. 137, 175 Pac. 865; *Jensen v. Corning Farms Co. et al.*, 49 Cal. App. 681, 194 Pac. 83; *Buckley v. McGraw*, 206 Cal. 541, 275 Pac. 221; 39 Cyc. 1383, 1384.) True, the vendors did not elect to rescind the contract and terminate it by their action, but the vendors did elect to put into execution the clause in the contract providing that:

"A failure to comply with the same shall, at the option of the said seller, terminate the right of possession, and the said buyer shall surrender the possession of said land and improvements thereon, if any, to the said seller, and any money paid by the said buyer by virtue of this agreement shall be retained and shall remain the property of said seller, *as liquidated damages.*"

In *Weatherford v. Adams*, 31 Ariz. 187, 251 Pac. 453, in a situation like that presented herein, the court held:

"Upon the breach of a contract, the party not at fault, ordinarily, has the choice of three remedies. (1) He may rescind, with the usual rights and duties of such an action. (2) He may refuse to recognize the breach and compel its performance. (3) He may treat the breach as terminating the contract and sue for damage. (13 C. J. 653; 6 R. C. L. 389.) In the case at bar, the breach of the contract is admitted, and that it is the third remedy which is being pursued. What then is the measure of damages?

"It is claimed by plaintiff that they may recover the damages which they have actually and necessarily suffered by reason of defendant's default, and that the payment of

the $4,000 to the Clarks falls within that category, in view of our holding in *Lewis v. Hornback,* 28 Ariz. 546, 237 Pac. 952. Defendants, on the other hand, urge that the contract itself fixes the measure of damages at the retention by plaintiffs of the amount already paid by defendants.

"The language of the contract bearing particularly on the issue reads as follows:

" 'And at the option of said parties of the first part, the said parties of the second part shall forfeit all rights thereto, and all interest of the parties of the second part in and to said lands by reason of this agreement shall thereupon cease and determine, and all moneys theretofore paid under the terms of this agreement to the parties of the first part shall be forfeited to and retained by said parties of the first part.''

.   .   .   .   .   .   .   .   .   .   .   .

"The Clarks have expressly waived the balance of their purchase price, the mortgage, which by its terms secured that only, was necessarily waived also. Their only remedy, as elected by themselves, was to recover what damages were legally due them, without reference to the mortgage, *and by the terms of their contract they have limited themselves to the payments already made as liquidated damages."*

We therefore conclude that under the terms of the contract respondents' damages are limited and were liquidated and fully paid when they exercised their option under the provisions of that portion of the contract to which reference has heretofore been made, and the measure of respondents' damage was not the difference between the contract price and the market value of the premises at the time of the breach, but their measure of damage is, under the contract, the amount of the payments already made upon the contract. (17 C. J. 966, sec. 266.)

The judgment must be reversed and it is so ordered, with instructions to the trial court to enter judgment in accordance with the views herein expressed. Costs awarded to appellants.

Givens and Wernette, JJ., concur.

MORGAN, J., Concurring.—I concur in the reversal of the judgment.

Speculation as to the remedies respondents may have had, upon breach of the contract by appellants, is not necessary to a decision of the question involved in this case and what is said in the foregoing opinion on that subject is *obiter dictum.*

The beginning of this action for damages, which cannot be maintained because the damages were liquidated by the contract and have been paid by appellants, does not constitute an election of a remedy. If a right to elect existed it was exercised when respondents repossessed the property.

*Allen v. Mohn,* 86 Mich. 328, 49 N. W. 52, 24 Am. St. 126, relied on by Justice Holden to support the views expressed in his dissenting opinion, is not in point. No provision was made in the contract under consideration in that case for liquidated damages, and nothing is therein contained calculated to limit the vendor's right to recover damages in the event of a breach thereof. The only question involved in this case is as to the effect of the provision in the contract for liquidated damages. That provision does not occur in the contract discussed in the Michigan case.

HOLDEN, J., Dissenting.—October 21, 1927, appellants and respondents entered into a written contract of sale, whereby the appellants agreed to purchase and the respondents agreed to sell, for the sum of $32,000, certain real property located in Twin Falls county. Appellants paid $1,000 down, and agreed to pay $1,000 on the first of February, 1929, and a like amount annually thereafter, until the balance of the purchase price, with interest, was paid in full. Appellants took possession of the farm covered by the contract, February 1, 1928. February 1, 1929, appellants paid the instalment due on that day, with interest, and appellants also paid the instalment, with interest, due February 1, 1930. When the February 1, 1931, instalment became due, appellants paid the interest, $285 on the principal of that instalment, and gave their note for the

balance, $715, due in a year. November 28, 1931, appellants paid $200 on the note. No other payment was made on the note, or on the unpaid balance of the purchase price, principal or interest.

Evidently for the purpose of inducing the respondents to take the farm back, cancel the contract of sale, and thus avoid the payment of damages for a breach of the contract, appellants had several conversations with respondents, concerning which appellant Andrew Glenn testified substantially as follows: That in September, 1931, he informed respondent Herman Koch that he did not have any show to make the payments; that he had raised a bigger crop than ever before, but that prices were such that he could not possibly make the payments; that about the first of December, 1931, he told respondent he did not expect to make the payments; that about the first of January, 1932, he again told the respondent he could not possibly make the payments; that he told respondent Herman Koch he could not go on with the deal and that it was his intention to give up the place and not go any further with the contract, and that in furtherance of that intention he abandoned the place about the first of February (1932), when his son moved off; that shortly prior to January 23, 1932, he told respondent he had done all he could, and that he could not raise the money.

Respondent Herman Koch testified substantially as follows: That appellant Andrew Glenn wanted him to take the place back; that he told him "no," he didn't want the place back; that he told appellant to live up to his contract and stay on the place; that appellant Mary E. Glenn (in the presence of her husband) stated in a conversation had January 23, 1932, that: "Well, then, the only thing that is left for us to do to keep you from taking our land (referring to other land than that covered by the Koch-Glenn contract) was to sign it away, and that is what we done; we signed it over to the boys; now, go to it and see what you can get; we are broke; we haven't got anything any more"; that Mr. Glenn then said: "We have already moved off the place; I and my wife are gone, my son is here yet, but he will be gone the first of February; and then the place is idle

and you can do with it what you please; we are done with it. . . . . I don't care what you do, you can take it over or you can let it lie idle for all I care; I am done with it; you can't get anything out of us; we are broke."

January 23, 1932, appellants moved off the farm, and February 1, 1932, Wesley Glenn (a son of the appellants) and his wife, who had been living on the farm, also moved off. The appellants repudiated the executory land sale contract, and abandoned the farm property covered by that contract. Nevertheless, the respondents did not elect to declare a forfeiture, nor exercise either or any option given them by the terms of the contract, nor take any affirmative action or steps whatsoever to dispossess the appellants. February 4, 1932, after such abandonment and repudiation, respondent rented the farm to a third party. February 5, 1932, respondents commenced this action to recover damages for the breach of the above-mentioned contract. The cause was tried with a jury at the May, 1932, term of the district court for Twin Falls county. During the course of the trial, and after respondents rested, appellants moved for judgment of nonsuit, which motion was denied. Appellants then submitted their proof, and then and after both sides had rested appellants moved that the court instruct the jury to bring in a verdict against the respondents and in favor of the appellants, which motion was denied. Thereupon the respondents moved that the court instruct the jury that they were entitled to recover and that the only question for the consideration of the jury was the amount of damages, which motion was granted by the court. The jury, under correct instructions covering the measure of damages, returned a verdict in favor of respondents and judgment was entered thereon, from which judgment, and an order overruling appellants' motion for a new trial, and an order overruling appellants' motion for judgment notwithstanding the verdict, an appeal was taken to this court by the appellants.

Numerous errors are specified, which, taken and considered together, either directly or indirectly, present these questions:

1. Do the acts and conduct of appellants constitute an abandonment and renunciation of the contract of purchase?

2. If so, do the acts of the respondents in taking possession of the farm and renting it constitute an acquiescence in such abandonment and renunciation and a mutual rescission of the contract?

3. If the acts and conduct of appellants constitute an abandonment and renunciation of the executory contract of purchase, and further, if the acts of respondents in taking possession of the farm and renting it do not constitute acquiescence in such abandonment and renunciation, and a mutual rescission of the contract, then, do the respondents, as one of their remedies, have an action for damages for the breach of the contract, and if so, what is the measure of damages?

These questions will be considered in the order in which they are above stated.

The positive declarations of appellant Andrew Glenn that he could not possibly make the payments; that he could not go on with the deal; that he did not expect to make the payments; that he would not go on any further with the contract; that it was his intention to give the place up, and that in furtherance of that intention he abandoned the place about the first of February (1932), make it clear and certain that appellants not only intended to, but actually did, abandon and renounce the entire contract, and, finally, appellants admit in their brief that the evidence shows an abandonment on their part, but insist that the evidence also shows an acquiescence therein on the part of the respondents.

Appellants contend, however, that upon the renunciation of the contract and abandonment of the property by them, only two remedies were open to respondents: 1. They could declare the unpaid instalments immediately due and proceed to collect them; or 2. They could repossess the property and retain all payments theretofore made.

The record shows that when appellant Andrew Glenn asked respondent Herman Koch to take the place back, that

Koch told him "no," he didn't want the place back, and that Koch also told Glenn to live up to his contract and stay on the place, which shows quite conclusively that the respondents did not acquiesce in the abandonment and renunciation of the contract by appellants, and that the wrongful acts of the appellants in abandoning and renouncing the contract, and moving off the farm and vacating the farm residence, made necessary the acts of respondents in taking possession of and renting the farm, and, consequently, those acts of respondents do not show that they consented to or acquiesced in the attempted rescission of the contract by appellants, nor do the combined acts and conduct of appellants and respondents show a mutual rescission of the contract. And, further, appellants cannot wrongfully create a situation which makes it necessary for respondents to take possession of and rent the farm, and then use those acts as evidence of a mutual rescission of the contract, or as evidence of an election by respondents to limit themselves to payments already made as so-called liquidated damages.

The mere taking possession of the farm by respondents after appellants' default in payment of the instalment, with interest, due February 1, 1932, did not operate as a rescission of the contract. (*Morris et al. v. Derr*, 55 Kan. 569, 40 Pac. 908.)

I will now discuss the question as to whether respondents, as one of their remedies, have an action for damages for the breach of the contract, and if so, was the renunciation of the contract in its entirety such a breach as to give an immediate right of action. That part of the contract which is material to the discussion follows:

"Time is of the essence of this contract, and in case said buyer shall refuse or neglect to pay said instalments of purchase price promptly as agreed herein, it shall be optional with the said seller to declare this contract forfeited, and upon the making of such declaration all right of the said buyer to complete said purchase or to continue in possession of said premises shall immediately terminate, and said buyer shall also forfeit all moneys paid to the said

seller as purchase money, unless said seller shall otherwise elect.''

''The said buyer shall be entitled to the possession of said premises so long as the terms of this agreement are complied with, but a failure to comply with the same shall, at the option of the said seller, terminate the right of possession, and the said buyer shall surrender the possession of said land and improvements thereon, if any, to the said seller, and any money paid by the said buyer by virtue of this agreement shall be retained and shall remain the property of said seller, as liquidated damages, and said buyer shall thenceforth be regarded as a tenant holding over after the expiration of his term and shall be liable to dispossession under the law relative to forcible entry and detainer.''

Time is made the essence of the contract, and by its terms respondents were given certain options: 1. To declare the contract forfeited, in case appellants refused or neglected to pay the instalments of the purchase price, as agreed. 2. To terminate appellants' right to the possession of the premises, in the event they should fail to comply with the terms of the contract. The forfeiture clause placed in the contract was not intended to and could not become operative until and unless respondents exercised the option the contract gave them, and declared a forfeiture, because it is very clearly provided that the forfeiture clause shall become operative only ''*upon* the making of such declaration,'' that is to say, *upon* the making of a declaration of forfeiture, and that interpretation of the forfeiture clause applies with equal force to the second option the contract gave respondents. By no act or conduct of the appellants could the forfeiture clause become operative so as to constitute the payments made by appellants on the purchase price, liquidated damages, and thus bar to the respondents an action to recover damages for the breach of the contract by appellants. The contract, of course, does not require respondents to exercise either option, nor does it expressly or impliedly specify the particular or any *remedy* respondents must pursue in case of default by appellants, in the

event respondents exercised either or any option. The contract created certain primary rights and duties, for example: The primary right of appellants to have respondents convey the farm to them, upon payment of the purchase price, as agreed, and the corresponding primary duty of respondents to convey the farm to appellants, and upon the abandonment and renunciation of the contract and failure of the appellants to pay the purchase price, as agreed, the respondents were thereby clothed with certain *remedial rights,* or *rights* of *remedy.* In other words, I have used the term ''remedy'' here, in the sense of the means which may be employed to enforce a right or redress an injury. And using the term ''remedy'' in that sense, it is clear the contract gives respondents full and complete liberty of choice of available and appropriate remedies.

In *Glock v. Howard & Wilson Colony Co.,* 123 Cal. 1, 55 Pac. 714, 69 Am. St. 17, 43 L. R. A. 202, the supreme court of California said:

''Of any contract for the sale of land there may be a breach, either by the vendee refusing to pay, or by the vendor refusing to convey. Actions at law for the breach of contracts are as old as the law itself. As the common law long antedated the system of equity jurisprudence, there was a time when the only recovery available to the injured party was a recovery in damages—money, for money is the only recompense which the law affords for a private injury. The establishment of equity jurisprudence afforded a different redress, one unknown to the law. Acting upon the wrongdoer, it forced him specifically to perform his contract. This, however, but increased the suitor's remedies, and left it optional with him in proper cases either to rest upon his legal action for damages or to seek in equity the relief of compulsory performance.''

In *Allen v. Mohn,* 86 Mich. 328, 49 N. W. 52, 24 Am. St. 126, a case substantially if not identical with the case at bar, the supreme court of Michigan says:

''Plaintiff and defendant made a contract, by which plaintiff agreed to sell to defendant certain real estate. The con-

tract was made in November, 1886. In September, 1890, the defendant informed plaintiff that he could not go on with the contract, refused to pay the interest which was then due, and said that he would give up the contract. While the testimony is not clear as to the circumstances under which plaintiff took possession of the land, it appears to be conceded by both parties that defendant abandoned the premises, and plaintiff thereupon took possession. The contract contained the following clause: 'It is mutually agreed between the parties that the said party of the second part shall have possession of said premises on and after date hereof, and he shall keep the same in as good condition as they are at the date hereof, until the said sum shall be paid as aforesaid; and, if said party of the second part shall fail to perform this contract, or any part of the same, said party of the first part shall, immediately after such failure, have a right to declare the same void, and retain whatever may have been paid on such contract, and all improvements that may have been made on said premises, and may consider and treat the party of the second part as his tenant holding over without permission, and may take immediate possession of the premises, and remove the party of the second part therefrom.' Upon the abandonment of the contract and of the premises by defendant, plaintiff had his choice of three remedies: (1) Bill for specific performance; (2) Suit at law to recover the purchase price; and (3) a repossession of the premises and a suit to recover damages for a breach of the contract. The latter remedy is supported by the following authorities: *Old Colony R. R. Co. v. Evans,* 6 Gray, 25 [66 Am. Dec. 394]; *Griswold v. Sabin,* 51 N. H. 170 [12 Am. Rep. 76]; *Meason v. Kaine,* 67 Pa. St. 126, 63 Pa. St. 335; *Porter v. Travis,* 40 Ind. 556; *Wasson v. Palmer,* 17 Neb. 330, 22 N. W. 773. In such case the measure of damages is the difference between the contract price and the value of the land at the time of abandonment and re-entry, less what has been paid. This rule is just, and places vendor and vendee upon a footing of equality and mutuality. In order to deprive the vendor of this

remedy, it must either be excluded by the terms of the contract, or waived by his acts and conduct. In this case the contract does not exclude it, nor has the plaintiff waived it.''

See, also, *Wasson v. Palmer*, 17 Neb. 330, 22 N. W. 773; *Prichard v. Mulhall*, 127 Iowa, 545, 103 N. W. 774, 4 Ann. Cas. 789; *First M. E. Church of Strong City v. North*, 92 Kan. 381, 140 Pac. 888; 13 C. J. 651.

And in order to deprive the respondents of a choice of the available and appropriate remedy of an action at law to recover damages for the breach of the contract, that remedy must be excluded by the terms of the contract or waived by the acts and conduct of the respondents. In the case at bar the contract does not, interpreted according to its clear and express terms, and the evident intention of the parties, exclude that remedy nor have the respondents waived it. (*Allen v. Mohn, supra.*)

And further, a forfeiture clause in an executory land sale contract, like the forfeiture clause in the contract in question, is intended for the benefit of the respondents, and does not abridge respondents' right in the matter of the election of remedies. (*Burg Bros. v. Bercut et al.*, 73 Cal. App. 114, 238 Pac. 166; 39 Cyc. 1343, subd. G; 25 Cal. Jur. 705.)

In an action for breach by a vendee of an executory contract for the sale of land, the vendor's measure of damages is the difference between the contract price and its market value at the time of the breach, less any payments made. (*Prichard v. Mulhall, supra; Wasson v. Palmer, supra; Allen v. Mohn, supra; First M. E. Church of Strong City v. North, supra.*)

Prior to February 1, 1932, appellants informed respondents that they could not go on with the deal, and that it was their intention to give the place up, and not go on any further with the contract, and appellant Andrew Glenn testified that in the furtherance of that intention he abandoned the place about the first of February, 1932, and it appears from the record that appellants abandoned the farm and moved out of the farm residence before the first day of

February, 1932, and the record also shows that appellants defaulted in the payment of the instalment, with interest, due February 1, 1932, as well as in the matter of the payment of the balance, with interest, of the February 1, 1931, instalment of the purchase price, and that the case at bar was commenced February 5, 1932. The renunciation of the entire contract, followed by an abandonment of the farm, coupled with the conduct of appellants in treating themselves as discharged from all of the obligations of the contract, gave respondents an option to treat the contract as wholly and entirely violated, and sue immediately for damages. In 27 R. C. L. 612, it is said that:

"The question has sometimes arisen as to whether the vendor may bring his action for damages on the theory of anticipatory breach of contract prior to the time of performance by the purchaser, where the latter has absolutely refused to complete the purchase. In most jurisdictions the theory of anticipatory breach is recognized. . . . . The vendor may maintain an action for damages in case of the purchaser's wrongful refusal to complete the contract."

And in 6 R. C. L. 1024, 1025, it is further stated:

"The controversy which has been alluded to is chiefly with respect to the question whether the renunciation of a contract before the time for performance is such a breach as gives an immediate right of action. A majority of the courts have reached the conclusion that a renunciation which amounts to a refusal to perform the contract at any time gives the adverse party an option to treat the contract as broken, and to sue immediately, notwithstanding the fact that under the terms of the contract the time for performance has not yet arrived. A man who wrongfully renounces a contract into which he has deliberately entered, cannot justly complain if he is immediately sued for compensation in damages by the man whom he has injured. The promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful termination of the contract and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages

as would have arisen from the nonperformance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss. When the promisee adopts the latter course, treating the contract as broken and himself as discharged from the obligations under it, he resolves his right into a mere cause of action for damages. . . . . Of all such advantages the repudiation of the contract by the other party, and the announcement that it will never be fulfilled, must of course deprive him. It is therefore quite right to hold that such an announcement amounts to a violation of the contract in omnibus, and that upon it the promisee, if so minded, may at once treat it as a breach of the entire contract and bring his action accordingly.''

It must be kept in mind that the respondents did not elect to rescind the contract; that they not only steadfastly refused to consent to or acquiesce in the repudiation and renunciation of the contract by appellants, but insisted that appellants live up to the contract ''and stay on the place''; that respondents took no affirmative action or steps whatsoever to dispossess the appellants; that the respondents did not breach the contract and were without fault; that appellants bluntly and defiantly told respondents in substance that they were done with the place and that they did not care what respondents did with it; that they (appellants) were broke and that respondents could not get anything out of them; that appellants afterward, and prior to the commencement of the instant case, moved out of the farm residence and abandoned the property covered by the contract. Then the respondents rented the property to a third party. Surely under these facts and circumstances, it cannot be said that respondents consented to or acquiesced in the attempted rescission of the contract by appellants, or that there was a mutual rescission of the contract, or that respondents elected to limit themselves to the payments already made, as liquidated damages.

The majority opinion rests upon *Weatherford v. Adams,* 31 Ariz. 187, 251 Pac. 453. In that case, it appears that

the vendors exercised the option their executory land sale contract gave them, and declared a forfeiture of all the rights the contract gave the vendees, as well as all payments theretofore made thereunder, including all interest of the vendees in and to the property covered by the contract, and further, the vendors demanded of and received from the vendees the possession of the property. In the case at bar, the respondents did not declare a forfeiture of all or of any of the rights of appellants under the contract in question, nor did the respondents declare a forfeiture of all or any of the payments made thereunder by appellants, nor did the respondents declare a forfeiture of all interests or of any interest of appellants in or to the property covered by the contract, nor did the respondents demand that appellants surrender possession of the property. After appellants had purposely defaulted and repudiated the entire contract and *abandoned* the farm to waste and weeds, and the rights of the parties by reason thereof had become fixed, then and not until then, the respondents rented the property and commenced this action to recover their damages. It is at once apparent that the rule in *Weatherford v. Adams, supra,* has no application to the case at bar.

Under the majority opinion, the Koch-Glenn executory land sale contract becomes a mere option, or unilateral agreement, subject to cancelation (if cancelation seems profitable and advantageous), at the whim and caprice of appellants, and against the will and without the consent of the respondents, and in violation of the terms and conditions of the contract.

Appellants admit that the evidence shows an abandonment by them, and insist that it shows acquiescence by respondents, and then appellants ''contend that putting the two together a mutual rescission is established; that the conduct on the part of both the respondent vendors and the appellant purchasers is so inconsistent with the continuance of the contract of sale that their acts constitute a mutual rescission by abandonment,'' thus invoking the application of

equitable principles in the determination of the rights of the parties to the contract. The term "equity," in its broadest and most general signification, denotes the spirit and the habit of fairness, justness and right, in transactions between man and man, and having that rule of conduct in mind, courts of equity have universally applied the maxim, or rule, that: "He who comes into equity must come with clean hands." The application of that wholesome rule to the case at bar would make it quite impossible that a wrongful and unjustifiable breach and repudiation of a valid contract could result in a substantial reward, to wit, the nonpayment of the damages suffered by respondents by reason thereof.

To recapitulate: It is my view that the forfeiture clause placed in the contract in question was not intended to and could not become operative until and unless respondents exercised the option the contract gave them, and declared a forfeiture; that the acts and conduct of appellants constitute a renunciation of the contract in its entirety; that the acts of respondents in taking possession of the farm and renting it do not constitute an acquiescence in such renunciation, and a mutual rescission of the contract or an election to limit themselves to the payments already made, as liquidated damages; that appellants cannot take advantage of their own wrongful conduct to escape the payment of damages suffered by respondents; that upon the renunciation of the entire contract by appellants the respondents had an election of the following remedies: 1. To rescind the contract with the usual rights and duties of such action, or 2. To stand on the contract and sue to recover past due instalments, as well as deferred instalments of the purchase price, with interest, as they become due, or 3. To treat the acts and conduct of appellants as an abandonment of the farm, and a renunciation of the contract in its entirety, and sue at once for damages for breach of the contract.

And the measure of respondents' damages is the difference between the contract price and the market value of

the property at the time of the breach, less the payments made by appellants.

For the foregoing reasons, I cannot concur in the majority opinion.