238 P.2d 1145

STATE ex rel. ROBINS, Governor, et al. v. CLINGER.

No. 7806.

Supreme Court of Idaho.

Dec. 20, 1951.

224

Robert E. Smylie, Atty. Gen. and J. R. Smead, Asst. Atty. Gen., for appellant.

A. A. Merrill, Idaho Falls, and T. W. Smith, Rexburg, for respondent.

PORTER, Justice.

On March 8, 1951, appellant filed its amended complaint in this action. Respondent filed a general demurrer to the amended complaint. After hearing thereon, the demurrer to the amended complaint was sustained and appellant given 20 days within which to amend its amended complaint. After the expiration of the 20 days, and appellant having indicated it intended to stand on the amended complaint, a judgment of dismissal was entered. From such judgment of dismissal, appellant has appealed to this court.

The material part of appellant's amended complaint is as follows:

"II

"That plaintiff was, on September 21, 1949, the owner in fee simple of the following described tract of public school land situated in Madison County, State of Idaho:

E. 1/2 Sec. 26, Twp. 5 N., Rge. 42 E.B.M. containing 320.0 acres;

that the State Board of Land Commissioners, acting on the purchase application of Zella M. Clinger, defendant, authorized sale by public auction of the above land in accordance with the statutes in such case made and provided; that notice of the sale of the above described land was advertised in four (4) consecutive issues of "The Rexburg Standard"; that said sale was held, as authorized and noticed, at the Madison County Courthouse in Rexburg, Idaho, at two o'clock P.M., Mountain Standard Time, on the 21st day of September, 1949, on the terms authorized and advertised by the said State Board of Land Commissioners, and announced at the commencement of the sale; and that these terms were ten percent (10%) of the purchase price and interest at four percent (4%) on balance of principal for remainder of year would be paid in cash on day of sale by the purchaser, and the remainder of the purchase price would be paid in forty (40) equal installments with interest at four percent (4%) on the unpaid balances.

"III

"That Zella M. Clinger, the defendant herein, was, on September 21, 1949, a married woman, and at all times mentioned herein and in each and all transactions mentioned herein, was acting on and in her

own behalf, and for the use and benefit of herself and her own separate property.

"IV

"That at the said sale on September 21, 1949, Zella M. Clinger, the defendant, bid for, and said bid being the maximum bid was accepted by the State Land Commissioner acting as selling agent for the State Board of Land Commissioners, and when defendant's bid as aforesaid was accepted defendand became the purchaser of all the above described property for the price of Thirty-five Thousand Two Hundred One Dollars ($35,201.00).

"V

"That the said defendant, at the sale as aforesaid, wrote a personal check, signed by Zella M. Clinger, the defendant, individually, in the amount of Three Thousand Eight Hundred Sixty-three Dollars and Forty-three Cents ($3,863.43) which covered the ten percent (10%) down-payment on principal plus interest and costs .and which was accepted by the said Land Commissioner as the payment, called for by the notice of sale, to be made on the day of sale.

"VI

"That the defendant thereafter defaulted on her agreement to purchase the land aforesaid by stopping payment on the check and by informing the said State Board of Land Commissioners that she would not carry out her contract to purchase the above described property, such notice being given to said Board by a letter mailed to said Board at its principal place of business at Boise, Idaho.

"VII

"That, as a consequence of defendant's default, the said State Board of Land Commissioners in pursuance of the statutes in such case provided again authorized the sale of the above described property; that after the notice of this State land sale had been duly arvertised, as provided by law, the above described property was put up for resale at public auction at the Courthouse in Rexburg, Idaho, at two o'clock P.M., Mountain Standard Time, on the 16th day of November, 1949, on the same terms as set forth in Paragraph II of this Complaint.

"VIII

"That the defendant was notified by the advertisement as aforesaid and by letter sent to the defendant by the said State Land Commissioner under date of October 13, 1949, of the date, time and place at which the above described land was to be resold at public auction; that at the said resale, T. W. Smith, Jr. made the high bid, which bid was the maximum bid and was an acceptable bid and which bid was accepted; and the said T. W. Smith, Jr. thereupon became the purchaser of all of the above described property for the price of Seven Thousand Four Hundred Dollars ($7,400.-00).

"IX

"That demand was made on the defendant by letter from the Attorney General, dated January 23, 1950, sent by registered

mail, that she reimburse the State of Idaho, acting in behalf of the Public School Endowment Fund, to which Endowment the above described lands belonged, for the damage suffered by it, as a consequence of her default, in the sum of Twenty-seven Thousand Eight Hundred One Dollars ($27,801.00): the difference between the defendant's bid of Thirty-five Thousand Two Hundred One Dollars ($35,201.00), which was accepted by the State at the original auction sale, and the amount at which the land was resold at the second sale to T. W. Smith, Jr., said amount being Seven Thousand Four Hundred Dollars ($7,400.00).

"X

"That defendant has not paid said deficiency nor any part thereof and refuses to pay said deficiency or any part thereof to plaintiff's damage in the sum of Twenty-seven Thousand Eight Hundred One Dollars ($27,801.00).

"Wherefore, plaintiff prays judgment against the defendant for the sum of Twenty-seven Thousand Eight Hundred One Dollars ($27,801.00) and costs of suit and for such other and further relief as to the Court may seem just and equiable."

Appellant's assignments of error present only the question of whether the trial court erred in sustaining the general demurrer to the amended complaint and entering judgment of dismissal. It is error to sustain a general demurrer to a complaint if the facts therein alleged are sufficient to constitute a cause of action entitling plaintiff to any relief against defendant. Paulsen v. Krumsick, 68 Idaho 341, 195 P.2d 363; Eastern Idaho Loan & Trust Co. v. Blomberg, 62 Idaho 497, 113 P.2d 406; Bicandi v. Boise Payette Lumber Co., 55 Idaho 543, 44 P.2d 1103.

"A complaint based on contract is generally held to be sufficient if it states the making of the contract, the obligations thereby assumed and the breach. The contract in such case contains the primary right of the plaintiff. In the obligation assumed by the defendant is found his duty and his failure to comply with the duty constitutes the breach. When these statements are supplemented with a statement of the amount claimed and a prayer for the judgment, the complaint is complete, and is not one which may be subject to a general demurrer." Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844, 846. The statutes provide the manner and method of the sale of public school lands. Section 58–313, I.C., is as follows:

"The state board of land commissioners may at any time direct the sale of any state lands, in such parcels as they shall deem for the best interests of the state. All sales of state lands shall be advertised in four consecutive issues of some weekly newspaper in the county in which the land is situated, if there be such paper, if not, then in some newspaper published in an adjoining county, and in such other paper or papers as the board may direct. The

advertisement shall state the time, place and terms of sale, a description of the land and value of the improvements, if any, thereon, and the minimum price per acre of each parcel as fixed by the board, below which no bid shall be received: provided, that sales of state lands shall only be made to citizens of the United States and to those who shall have declared their intentions to become such. If the required sum be not paid forthwith by the highest bidder any lands upon which such payment shall not be made may be immediately reoffered at public sale as before. If any land be sold on which surface improvements have been made by a lessee, or by a former purchaser whose certificate of purchase has for any reason been cancelled, said improvements shall be appraised under the direction of the state board of land commissioners. When lands on which improvements have been made, as above, are sold, the purchaser, if other than the owner or former owner of said improvements, shall pay the appraised value of said improvements to the owner thereof, or to the former purchaser who placed the same thereon, taking a receipt therefor, and shall deposit such receipt with the state board of land commissioners before he shall be entitled to a certificate of purchase or patent of said land: Provided, the lessee or former owner is not indebted to the state for delinquent rentals or installment payments on said land. If he is indebted to the state, the value of the improvements shall be credited on his indebtedness and the surplus, if any, be paid to him. All such receipts shall be filed and preserved in the office of said board: provided, that no school lands shall be sold for less than its [their] appraised value nor for less than ten dollars per acre."

Section 58-314, I.C., amended by Chapter 262, 1949 Session Laws, reads in part as follows:

"Terms of payment shall be as follows: Timber lands and lands chiefly valuable for timber, cash on day of sale, or on instalments as provided in section 58-411; lands acquired by sheriff's deed or deed taken in satisfaction of mortgage securing loan of state funds, cash on the day of sale or on such other terms and conditions as the state board of land commissioners may direct; on all other lands, except those mentioned in section 58-315, ten per cent of the purchase-money on the day of sale and the balance in forty annual payments with interest at the rate of four per cent per annum on all deferred payments; * * * The purchaser shall always have the right to make full payment with accrued interest at any time. Interest on deferred payments shall be payable annually in advance on January first, and interest for the first year to January first next succeeding shall be paid at the time of purchase.

"When the conditions hereinbefore prescribed have been complied with, the state board shall make and deliver to the purchaser a certificate of purchase containing the name of the purchaser, a description of

the land, the sum paid, the amount remaining due, and the date at which each of the deferred payments falls due and the amount thereof, and the amount and date of the several payments of interest to be made thereon."

Section 58–316, I.C., provides that if the purchaser, after receiving a certificate of purchase, fails to make any of the payments stipulated in the certificate, the state board of land commissioners, under procedure set out in the statute, shall forfeit the rights of the purchaser in the land, annul the contract and certificate and forfeit to the state all previous payments made by the purchaser.

■ Respondent appears to take the position the amended complaint shows that no binding contract of sale ever came into effect. That respondent's bid was merely an offer to purchase. That a valid contract of sale would not exist until there was a formal acceptance by the state board of land commissioners of respondent's offer to purchase and a tender of the certificate of purchase; and that respondent could withdraw her bid at any time prior thereto. The acceptance of the bid of respondent at the public sale by the auctioneer conducting the sale gave rise to an executory contract of sale between the parties. State ex rel. Fitch v. State Board of School Land Com'rs, 27 Wyo. 54, 191 P. 1073, 11 A.L.R. 539. "The vendor and vendee, upon the acceptance of the latter's bid at an auction, occupy the same relation towards each other as exists between the "promisor and promisee of an executory contract of sale conventionally made." 5 Am.Jur. 474, par. 41.

■ It became the obligation of respondent to make the cash payment required to be made on the day of sale. The giving of the check for such cash payment by respondent, upon which respondent thereafter stopped payment, did not constitute satisfaction of respondent's duty to make such cash payment.

■ The acceptance of the check by the state land commissioner for the cash payment was conditional upon the check being paid upon presentment for payment. The check did not pay or discharge the original requirement of a cash payment. When payment on the check was stopped, the requirement of a cash payment on the day of the sale had not been met. In 70 C.J.S., Payment, § 24–a, page 233, it is stated as follows: "The delivery to, or acceptance by, the creditor of his debtor's check, although for convenience often treated as the passage of money, is not payment, even though the check is certified before delivery, in the absence of any agreement or consent to receive it as payment, or any laches or want of diligence on the part of the creditor, or the negotiation of the check by him, as discussed infra subdivisions b–d of this section. In such case, the original debt is not paid or discharged unless, and until, the check itself is actually paid on due presentment, * * *".

In Mollendorf v. State, 67 Idaho 151, at page 157, 173 P.2d 519, at page 522, we said:

"It is next contended that the fine and costs were paid by check, and when the check was handed to the probate judge the judgment was satisfied, consequently the commitment issued thereafter was illegal, the judgment having been fully paid and settled.

"The contention is unique, but a fallacy, having neither foundation in fact nor in law. The facts disclose that when the check was presented to the bank, payment was stopped by order of respondent. The giving of the check to the judge and stopping payment thereon was not payment of the fine nor satisfaction of the judgment."

When respondent stopped payment on the check and informed appellant she would not carry out the contract, her actions constituted a breach of the existing contract of sale. Appellant, among other remedies, then had the right to treat the contract as terminated and to bring its action for damages. Koch v. Glenn, 53 Idaho 761, 27 P.2d 870. In 7 C.J.S., Auctions and Auctioneers, § 8(3), page 1263, it is said:

"A seller may sue, for damages or for the purchase price, a purchaser who refuses to comply with his bid or the terms of sale.

"Where personal or real property is sold at public auction and the purchaser refuses to comply with his bid or with the terms of sale, the vendor may maintain an action against him for damages or for the purchase price."

After respondent's breach of the contract, appellant was not required to tender further performance on its part. Elson v. Jones, 42 Idaho 349, 245 P. 95.

The measure of damages for breach of an executory contract of sale is the difference between the contract price and the market value of the premises at the time of the breach unless by the contract the parties have otherwise stipulated. Koch v. Glenn, supra. Also, the amount of damages may be fixed or limited by statute. Whether or not appellant has misconceived the measure of its damages is of no import in determining whether the amended complaint in this case states facts sufficient to constitute a cause of action.

Respondent urges that appellant's only remedy, and the one pursued, was to readvertise and reoffer the property for sale under the provision in Section 58–313, I.C., reading, "If the required sum be not paid forthwith by the highest bidder any lands upon which such payment shall not be made may be immediately reoffered at public sale as before." When a vendee breaches an executory contract of sale, the vendor has the right to treat the contract as terminated, to sue for damages for its breach and to retain or resell the land as he sees fit. The subsequent sale of the land has no bearing on the pre-existing right to sue for damages.

Under respondent's view, the option to resell contained in the quoted words of the statute, would add nothing to the rights of appellant. We are inclined to the view, however, the statute means that if the successful bidder does not *forthwith* pay the required purchase price, the land may be immediately reoffered for sale at the public auction then being conducted without the necessity of readvertisement. Section 58–310, I.C., with reference to auction of leases of public lands, provides that when the highest bidder does not forthwith pay the amount of annual rent bid, the said lease may be immediately reoffered in the same manner at public auction *without further notice*. The provision in Section 58–313 I.C., that the land may be immediately reoffered at public sale *as before,* appears to be analogous to and to have the same meaning as the provision in Section 58–310, I.C. In any event, the statute does not, in terms or by inference, preclude the right of appellant to maintain its action for breach of contract.

Respondent contends this action cannot be maintained against a married woman. The amended complaint alleges respondent was acting on her own behalf and for the use and benefit of herself and her own separate property. There is no merit in this contention.

Respondent urges the amended complaint is fatally defective in that it does not show the value of the improvements on the land; or that the price bid was not less than the appraised value; or that respondent was a citizen of the United States or had declared her intentions to become such. If there be any factual merit in such contentions, such facts and the effect thereof, would be matters of defense. We find no other contentions of respondent of sufficient weight to require discussion.

The judgment of dismissal is reversed and the cause remanded with directions to vacate the judgment, overrule the general demurrer and require respondent to answer the amended complaint. Costs are awarded to appellant.

GIVENS, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.