GEORGE W. WOMACK v. H. H. COLEMAN and Another.[1]

February 13, 1903.

Nos. 13,330—(111).

## Contract of Sale.

A contract for the sale and purchase of real estate provided that the first payment of $15,000, evidenced by a promissory note by the purchaser and one indorser, be placed in escrow, to be delivered to the seller as an absolute forfeiture and indemnity in case the purchaser should fail to pay the purchase price upon being tendered a marketable title and sufficient deed. The contract also provided that the seller should within ten days furnish the purchaser an abstract of title brought down to date, and that he should have twenty days thereafter to examine and accept the title. In an action by the seller to enforce payment of the note, held:

## Abstract of Title.

1. The evidence was conclusive that the contract was modified to the extent that the abstract, although not complete, was delivered and accepted at the time the contract was executed; that the purchaser assumed the duty of extending it; and that the twenty days began to run from the date of the contract.

[1] Reported in 93 N. W. 663.

89 M.—2

**Marketable Title.**
> 2. The title, as tendered by the seller, was marketable.

**Stipulated Damages.**
> 3. The amount stated to be forfeited as indemnity was stipulated damages, and not a penalty.

Action in the district court for Hennepin county to recover from defendants, H. H. Coleman and C. E. Lindberg, maker and indorser respectively, the sum of $15,000 and interest, upon a promissory note. The case was tried before Pond, J., who found in favor of defendants. From a judgment entered pursuant to the findings, plaintiff appealed. Reversed, and new trial granted.

*Squires & Griggs,* for appellant.

*Renville Chinnock,* for respondents.

LEWIS, J.

The parties to this action on March 27, 1901, entered into a written contract which recited that appellant held an option for the purchase of certain mineral lands in the state of Michigan, consisting of about eight hundred forty acres and respondent Coleman agreed to pay appellant, as and for the purchase price thereof, the sum of $145,000, as follows:

"At the signing of this contract, said second party's certain promissory note for fifteen thousand dollars, with an indorser thereon, duly accepted by said party of the first part, due and payable April 5th, 1901; said note to be placed in escrow with Joseph Lockey, cashier of the National German-American Bank of St. Paul, Minnesota; and the said Joseph Lockey, upon maturity of said note, is hereby authorized and instructed, upon request of either party hereto, to protest said note for non-payment thereof, it being understood and agreed that the foregoing note, or the cash equivalent thereto, as the case may be, is placed in escrow, conditioned that the said second party shall fulfil the terms of this contract, and, should he not fulfil same, that the said note, or the moneys equivalent thereto, shall be an absolute forfeiture and indemnity to the said party of the first part, or those whom he may represent, and 'that this agreement,, and all the conditions thereof upon said forfeiture, shall be absolutely null and void as to all parties hereto.

"And the said party of the second part agrees to make a further payment of twenty-five thousand dollars on the purchase price of the hereinbefore described property on June 1st, 1901, twenty-five

thousand dollars August 1st, 1901, forty thousand dollars October 1st, 1901, and the balance of said purchase price on January 1st, 1902, and all deferred payments herein shall bear interest at the rate of six per cent. per annum before and after maturity. And the said party of the first part, in consideration of the premises herein, agrees to furnish said second party within ten days of the date of this agreement a full and complete abstract to date of the hereinbefore described properties, and that the said second party herein shall thereafter have twenty days from the delivery of said abstract for examination and acceptance of the title thereof; and it is further understood and agreed by and between the parties hereto that, should the title of the properties hereinbefore described prove defective, sufficient to warrant said second party in rejecting same (a reasonable time to be allowed to correct any imperfections in title), then and in that case the said note, or the moneys equivalent thereto, placed in escrow as a forfeiture under this contract, shall be returned in full to the said second party herein, and he shall be placed to no further expense than such as he may have incurred by reason of the examination of the title to said properties, or expenses contingent thereto.

"And the said party of the first part further agrees with the said second party, for and in consideration of the premises hereinbefore set forth, that should he, for any reason, be unable to fulfil the conditions of this contract, and deliver deed of warranty to said properties at the times and in the manner set forth in this contract, then and in that case this agreement shall be void and of no effect, and the said forfeiture hereinbefore set forth shall be returned in full to the said party of the second part. Time being of the essence of this contract."

Thereupon a promissory note of $15,000 was executed by respondent Coleman, payable to appellant on or before the following April 5. Respondent Lindberg indorsed the same, and it was then delivered in escrow to Joseph Lockey, as provided in the contract, who executed the following receipt:

"I, Joseph Lockey, cashier of the National German-American Bank of St. Paul, Minnesota, hereby certify that there has been placed with me in escrow by George W. Womack and H. H. Coleman an envelope, duly signed and sealed, purporting to contain fifteen thousand dollars, and conditioned that I shall turn said envelope, or the contents thereof, over to George W. Womack, or his assigns, in the event that the said H. H. Coleman fails to fulfil the purchase of certain properties, known as the 'Norwich Mines,' located in Ontonagon county, Michigan, within twenty days of the date of this receipt; and, in the event that the said George W. Womack or his assigns fail to deliver good and sufficient title to

the said property after due examination thereof by the said H. H. Coleman, then and in that case the envelope hereinbefore placed with me is to be by me turned over to the said H. H. Coleman; otherwise to be held until the expiration of the twenty days herein.

"Dated this 27th day of March, A. D. 1901.

"Joseph Lockey."

The lands belong to the Essex Copper Company, a corporation. An abstract of the premises was then delivered to Coleman, who executed on the contract the following receipt:

"Ramsey County, Minnesota.

"I, H. H. Coleman, hereby certify that I have received the abstract of title to the foregoing property this 27th March, 1901, pursuant to the terms of the foregoing agreement.

"H. H. Coleman."

The abstract thus furnished had not been brought down to date, but was turned over to Coleman's attorney, who took it with him to Michigan, where he went on or about April 9 for the purpose of examining the title to the lands; and he caused the abstract to be completed, returning to St. Paul about April 16, and, under date of April 17, wrote an opinion for Mr. Coleman in respect to the title examined. Appellant caused a warranty deed to be prepared, and ready for delivery, and made demand upon Coleman for payment of the purchase price, which was refused.

This action was commenced for the purpose of recovering the amount of the note deposited in escrow. The trial court found that the agreement and note were executed and delivered as stated, and that at the time of the trial the note was still in the hands of Mr. Lockey, in escrow. The court further found that under and pursuant to the terms of the agreement a full and complete abstract of title was delivered to Coleman on April 15, 1901; that appellant was to deliver a good and marketable title to the land described in the agreement, and that the title offered was not marketable; that appellant obtained his option for the sale of lands from one Meads, who on April 23, 1901, cancelled the option, notifying Coleman thereof, and that thereafter appellant was unable to deliver title; that on April 27 the owner of the land, the Essex Copper Company, conveyed the same, through Coleman, to a

third party; that Coleman received no compensation or benefit from the transfer,—and, as a conclusion of law, held that respondent was entitled to judgment.

Judgment having been entered, an appeal was taken therefrom, and several important questions are presented:

First. When did the twenty days commence to run, within which respondent was to examine and accept the title?

Second. Did appellant, within the required time, offer a marketable title to the premises?

Third. If the title was marketable, was the amount of $15,000, stipulated in the agreement, liquidated damages, or was it a penalty?

1. The agreement, as written, provided that a full and complete abstract of title to date should be delivered within ten days of the date of the agreement, but this provision was modified to this extent: Respondent accepted the abstract in its then condition as being within the terms of the agreement, and the twenty days within which he was to examine and accept the title commenced to run on March 27, and expired on April 16. This conclusively appears from the fact that respondent so stated in the written receipt indorsed upon the contract, from a reference to it in the receipt executed by Mr. Lockey, and from the fact that the abstract was then and there delivered by appellant and received by Mr. Coleman, who turned it over to his attorney, who caused it to be extended at the time he was examining the title in Michigan.

2. So far as appears from the record, if there were any defects in the title to such an extent as to render it unmarketable, they are found in the opinion of the attorney; and it must be assumed that, if the objections there made were not well taken, the title was marketable. It is unnecessary to refer to these objections in detail. Some of them were not insisted upon at the trial, most of them are not worthy of consideration, and the title was not made unmarketable by any of the omissions or alleged defects mentioned. We shall refer only to the following: The records of the county clerk of Ontonagon county, Michigan, show that in 1899 a bill in chancery was filed by one Moore against the Essex

Copper Company to quiet title to eighty acres of the land in question. The objection was made that, although thereafter Moore executed and delivered to the copper company a quitclaim deed of the premises involved in the action, yet according to the record the suit was still pending, and he insisted that it should be dismissed; otherwise the lis pendens which had been put on record constituted a cloud. The objection was not well taken. The real estate, the subject-matter of the cause, having been conveyed pending the action, there was nothing left to the suit, and the lis pendens necessarily became futile. The dismissal of the action would add nothing to the rights of the parties.

Objection was made that a tax deed for the year 1865 from the state of Michigan to the Norwich Mining Company to a part of the land did not show, as recorded, the signature of the auditor general, and it was insisted that the matter should be corrected by the procurement and record of a new deed. The matter referred to did not affect the title in any way, for the reason that the original owner, the Hamilton Mining Company, subsequently deeded to the grantee in the deed, and the tax title was immaterial, conceding that the record showed it to be defective. Nor is the objection tenable that a deed purporting to be executed by a corporation must recite facts to show that it was in fact a corporation, and the authority of the officers purporting to execute it.

3. It remains to determine whether appellant was required to prove his actual damages, or whether he was entitled to recover the amount of the $15,000, with interest, according to the terms of the note, as stipulated damages. Appellant proceeded upon the latter theory. Mr. Sutherland, in his work on damages, makes the statement that the question whether a fixed sum is intended as a penalty or liquidated damages is generally answered according to the justice and equity of the particular case, and that, while there is much confusion among the authorities, the trend of modern decisions is to give effect to the intention of the parties. There are no fixed and certain rules by which every case may be determined.

In the case of Taylor v. Times Newspaper Co., 83 Minn. 523, 86 N. W. 760, the subject was discussed; and it was there held that

the question was to be determined from the language of the contract, the nature of the breach, and the extent of the actual damages, and all facts and circumstances under which it was made, and the evident intention of the parties. In Carter v. Strom, 41 Minn. 522, 43 N. W. 394, the court held a certain sum to be a penalty, although named as stipulated damages; but it was upon the theory that the agreement to pay the stipulated amount in case of default was applicable alike to several different stipulations or conditions in the agreement, and for that reason the parties would not be considered to have intended the sum named to have been the amount of damages in each of those several particulars.

In this case the $15,000 was deposited in the form of a note, as the first payment. Its delivery to appellant was conditioned upon his furnishing a marketable title. The language used, viz., "shall be absolute forfeiture and indemnity to said party of the first part," may be treated either as a penalty or as stipulated damages, so far as the language itself is concerned, but it was evidently the intention of the parties that these words meant payment in case of default. If such was the intention, then the parties must be governed accordingly, unless there are special conditions or circumstances which make that course inequitable. We fail to find anything in the record which would seem to make the enforcement of payment unjust. The amount involved was large, the damages resulting uncertain, with strong probabilities that they exceeded the sum stipulated, and the agreement to pay the amount was conditioned upon one specific question, which was evidently well understood, and thus there is no uncertainty.

For these reasons the judgment is reversed, and new trial granted.