[Civil No. 2409. Filed December 13, 1926.]

[251 Pac. 453.]

J. W. WEATHERFORD and MARGARET J. WEATHERFORD, His Wife, Appellants, v. E. C. ADAMS and BETTIE M. ADAMS, His Wife, Appellees.

Mr. Earl Anderson, Messrs. Ellinwood & Ross, Mr. Martin Le Boutillier and Mr. Maurice Blumenthal, for Appellants.

Messrs. Phillips & Phillips and Messrs. Cox & Carson, for Appellees.

Mr. Frank O. Smith, for Phoenix Realty Board, *Amicus Curiae.*

LOCKWOOD, J.—July 17th, 1918, David O. Clark and wife contracted in writing to sell to E. C. Adams and Bettie M. Adams, his wife, hereinafter called plaintiffs, for $30,000 certain farming land situate in Maricopa county, the payments to be made as follows: $2,000 in cash, $2,000 per year on or before the seventeenth day of July of each year until, including the cash, the total sum of $14,000 had been paid, and the balance of $16,000 on or before July 17th, 1926, with interest at eight per cent on the deferred payments. This instrument, which we will refer to hereafter as the Clark contract, contained, among other things, the following provision:

"In case the parties of the second part shall be in default in making any of the payments herein required of them, either principal, interest, assessments or taxes, and such default shall have existed for a period of thirty days, then the parties of the first part may terminate this agreement, and, in such case, the parties of the second part shall, upon demand, surrender possession of the said one hundred and twenty acres of land to the parties of the first part, and all payments thereto made by the parties of the second part shall be retained by the parties of the first part as liquidated damages, and parties of the first part may thereupon foreclose said mortgage for $12,000,

as in said mortgage provided, and the parties of the first part shall be released from all liability in law or equity from making any conveyance of said one hundred and twenty acres of land.''

As security for the $12,000, payable on or before July 17th, 1925, in annual installments, as above set out, plaintiffs gave Clark a first mortgage on other real estate owned by them, which mortgage, it is admitted, is the one for $12,000 referred to in the Clark contract, as quoted above. The various documents necessary to complete the deal were placed in escrow with the Phoenix National Bank, to be delivered to plaintiffs on their fulfillment of the contract, otherwise to the Clarks. Plaintiffs went into possession of the land and some eight months later contracted with J. W. Weatherford and Margaret J. Weatherford, his wife, hereinafter called defendants, to sell them the same property. We will hereafter call the last-named agreement the Weatherford contract. On its face, the purchase price was $42,000, plaintiffs acknowledging receipt of $14,000 cash on the execution of the agreement and the balance to be paid in the same installments and on the same dates as the deferred payments in the Clark contract, to wit, $2,000 per year on the seventeenth day of July of each year, up to and including 1925, and the remainder on or before July 17th, 1926. The Phoenix Title & Trust Company was made the escrow-holder of the papers necessary to the Weatherford-Adams deal. This agreement of sale contained, among others, the following clauses:

''It is further agreed that time is the essence of this contract, and, in the event of default in payment of any of the payments herein provided to be paid promptly when same become due and payable, or in the event of a failure of the parties of the second part promptly to comply with any of the terms hereof, then the said parties of the first part shall be relieved from all obligations in law or equity to

convey said property, and, at the option of said parties of the first part, the said parties of the second part shall forfeit all right thereto, and all interest of the parties of the second part in and to said lands by reason of this agreement shall thereupon cease and determine, and all moneys theretofore paid under the terms of this agreement to the parties of the first part shall be forfeited to and retained by said parties of the first part. . . .

"It is further mutually understood and agreed by and between the parties hereto, as follows: That the said parties of the second part shall enter into possession of the said premises immediately, and shall continue in such possession for and during the life of this agreement without the payment of any further rent; and, in case of default in the payments and conditions in said agreements, the said parties of the second part shall immediately surrender possession of said premises to the said parties of the first part on demand. That the covenants and conditions herein shall be binding upon the heirs, executors, and administrators and assigns of the parties here."

Defendants paid all installments provided in the Weatherford contract up to July 17th, 1922, but defaulted on the payment due that day, there remaining unpaid on the principal of the contract $22,000, and, later, under their instructions, the escrow papers were returned to plaintiffs. The latter in their turn made all payments due under the Clark contract up to the same date, but also defaulted at that time; and on November 20th, 1922, the Clarks declared a forfeiture of their contract with plaintiffs and on January 24th, 1923, took possession of the premises. The Clarks thereafter threatened to foreclose on the $12,000 mortgage above referred to, it being their contention there was still due and unpaid them, notwithstanding the forfeiture, the sum of $8,000 for which said mortgage was security. Negotiations for a compromise of this alleged indebtedness were then

had between Clark and the plaintiffs, and it was finally settled for $4,000, plaintiffs giving the Clarks a note for that sum, properly secured. Thereafter plaintiffs brought suit against defendants to recover damages for the latter's breach of the Weatherford contract.

The complaint, on which the matter was tried, sets up the usual formal allegations, the execution of the two contracts, but that plaintiff received only $2,000 cash, instead of the $14,000 stated in the Weatherford contract as being paid at the time of its execution. It then reads as follows:

"VIII. That, at the time of the execution of the said agreement between plaintiffs and defendants, defendants knew of the terms and conditions of the agreement theretofore executed between plaintiffs and the said Clarks, and the terms of the agreement between plaintiffs and defendants were, in the knowledge of the defendants, made to correspond with the terms of the agreement between plaintiffs and the said Clarks, and it was understood between plaintiffs and defendants that defendants should make payments as provided in said agreement to the escrow holder, the Phoenix Title and Trust Company, and the payments, when made, should by the said escrow holder be transferred to the Phoenix National Bank and paid to them as agents for the said Clarks, and as a credit on the said agreement between plaintiffs and the said Clarks, and defendants knew and realized that it was necessary for them to make the payments according to the terms of said agreement between plaintiffs and defendants, at the times therein provided; otherwise, plaintiffs' title and right to the premises would be subject to be forfeited by the said Clarks upon failure to receive the payments at the times and manner provided in said agreement between plaintiffs and defendants, and that the mortgage executed by plaintiffs to the said Clarks to secure the deferred payments, which defendants agreed to make, would be subject to foreclosure."

It is further stated that the Weatherford contract was duly fulfilled until the seventeenth day of July, 1922, when—

"with full knowledge of the facts hereinabove set out, and with full knowledge of the forfeiture likely to be declared by the said Clarks, and the probability of the said Clarks foreclosing the mortgage executed by plaintiffs to the said Clarks to secure the payment of the deferred payments to be made by defendants, the defendants breached their said agreement."

The complaint then sets up the declaration of forfeiture by the Clarks and the amount still due under the Weatherford contract, and that the reasonable value of the premises at the time of the breach was some $5,807.42 less than the sums still due under the Weatherford contract. It also alleges the threatened foreclosure of the Clark mortgage and that plaintiffs, to minimize the damages, finally compromised that matter for $4,000, with interest at eight per cent from December 4th, 1922. The prayer of the complaint was for judgment in the sum of $4,000, with interest and costs.

Defendants demurred to the complaint on the ground of misjoinder of causes of action, and that it did not state a cause of action, and moved to strike various portions thereof. By answer, as a special defense, they set up the portion of the Weatherford contract above quoted, and alleged that they, the defendants, had defaulted in their agreement to pay the purchase price, and that:

"Plaintiffs exercised the option in their favor contained in said agreement and declared a forfeiture of all of said defendant's rights under said agreement and all payments theretofore made thereunder, as well as all of said defendants' interest in and to said land, and plaintiffs thereupon rescinded, terminated and repudiated said agreement and kept and retained said payments so made by defendants and those claiming under them as liquidated damages sus-

tained by plaintiffs by reason of the breach of said agreement, and plaintiffs demanded of and received from defendants the possession of said premises, and ever since then plaintiffs and those claiming under them have had and now have the exclusive possession of said premises. . . . ''

The matter was tried to a jury, and, in their opening statement, counsel for plaintiffs claimed they expected to show, among other things, that the payments in the Weatherford contract were exactly the same as those in·the Clark contract in amount and time, which was well known to Weatherford and ''that he assumed all this responsibility that Adams had assumed with Clark.''

After the plaintiffs' case was concluded, defendants moved for an instructed verdict, which was denied, and a verdict was later returned in favor of plaintiffs for damages in the sum of $4,000. After judgment was rendered on the verdict and the motion for a new trial duly overruled an appeal was taken to this court.

The case is one of considerable importance, not only to the parties directly involved, but also to those engaged in dealing in real property within this state. It is a well-known fact that a large proportion of the realty transfers made in Arizona are not for cash, but carry deferred payments under contracts similar in general terms to those in the case at bar. It is therefore vitally necessary that the vendors and purchasers of lands, as well as realtors, should know the legal·effect of contracts of this nature and the rights and liabilities created thereby.

Upon the breach of a contract, the party not at fault, ordinarily, has the choice of three remedies. (1) He may rescind, with the usual rights and duties of such an action. (2) He may refuse to recognize the breach and compel its performance. (3) He may treat the breach as terminating the contract and sue

for damages. 13 C. J. 653; 6 R. C. L. 1032. In the case at bar, the breach of the contract is admitted, and that it is the third remedy which is being pursued. What, then, is the measure of damages?

It is claimed by plaintiffs that they may recover the damages which they have actually and necessarily suffered by reason of defendants' default, and that the payment of the $4,000 to the Clarks falls within that category, in view of our holding in *Lewis* v. *Hornback*, 28 Ariz. 546, 237 Pac. 952. Defendants, on the other hand, urge that the contract of itself fixes the measure of damages at the retention by plaintiffs of the amount already paid by defendants.

The language of the contract bearing particularly on the issue reads as follows:

"And, at the option of said parties of the first part, the said parties of the second part shall forfeit all right thereto, and all interest of the parties of the second part in and to said lands by reason of this agreement shall thereupon cease and determine, and all moneys theretofore paid under the terms of this agrcement to the parties of the first part shall be forfcited to and retained by said parties of the first part."

It is admitted that defendants paid to plaintiffs the sum of $6,000 under their contract. It is equally admitted that the $6,000 was *retained by plaintiffs, or, at least, applied by them to their own use and never returned to defendants.* There are three ways in which such retention might be justified. First, it might be claimed it was merely rent for the use and occupation of the premises; second, that it was by way of a penalty for a breach of the contract, leaving the amount of actual damages still open for adjudication; and, third, that it was liquidated damages. The contract itself provides, when granting possession:

"That the said parties of the second part shall enter into possession of said premises immediately

and shall continue in such possession for and during the life of this agreement without the payment of any further rent. . . . ''

This would certainly seem to negative any idea that the $2,000 per year should be considered *as rent*. Especially is this true, in view of the fact that defendants were to pay and did pay eight per cent interest on the entire deferred payments up to the time of their breach of the contract.

The contract uses the word ''forfeit,'' and that sometimes implies a penalty, but the best considered late cases hold the mere use of the words ''penalty,'' ''forfeiture,'' ''liquidated damages,'' and ''stipulated damages'' is not conclusive as to the true construction, but the intention of the parties is to be ascertained and given full effect. *Northwestern Terra Cotta Co.* v. *Caldwell et al.*, 234 Fed. 491, 148 C. C. A. 257; *United States* v. *Bethlehem Steel Co.*, 205 U. S. 105, 51 L. Ed. 731, 27 Sup. Ct. Rep. 450 (see, also, Rose's U. S. Notes).

The general rule, applied in the best reasoned cases to test that intent, where the face of the contract does not explicitly show whether a sum retained on the forfeiture of a contract is a penalty or liquidated damages, may be stated as follows: Where the amount retained is grossly disproportionate to the actual damages, either as being excessive or inadequate, and, especially, when there is available a simple method for ascertaining the exact damages, it will be considered as a penalty. But if the damages are uncertain in their nature, difficult to determine with certainty, and dependent on conflicting opinions, particularly where the money was paid originally, not as security for the performance of the contract, but in part payment of the obligation assumed under it, the courts, as a general rule, construe the sum retained as liquidated damages. *Cooley et al.* v. *Call et al.*, 61 Utah, 203, 211 Pac. 977;

*Lipscomb* v. *Fuqua,* 103 Tex. 585, 131 S. W. 1061; *Durst* v. *Swift,* 11 Tex. 138; *Woodbury* v. *Turner, Day & Woolworth Mfg. Co.,* 96 Ky. 459, 29 S. W. 295, 16 Ky. Law. Rep. 566; *Womack* v. *Coleman,* 89 Minn. 17, 93 N. W. 663; *Barnette* v. *Sayers,* 53 App. D. C. 169, 289 Fed. 567.

This court, in the case of *Armstrong* v. *Irwin,* 26 Ariz. 1, 32 A. L. R. 609, 221 Pac. 222, has reviewed the cases and discussed the law thoroughly and is committed to the view that a sum of money, paid in part performance of a contract providing for its forfeiture upon default, is presumably to be treated as liquidated damages—that is, as a substitute for performance—and not as a penalty or merely a security for performance. In the case at bar, the plaintiffs, in addition to receiving eight per cent interest net on the agreed value of the land, which cannot be said to be an unreasonably small sum to be considered as compensation for the use of the premises, received and retained twenty per cent of the contract price and, at the same time, got the land back. It seems to us such a sum was reasonably proportionate to the true damages.

It is urged by plaintiffs in this connection that defendants assumed personal responsibility for the fulfillment of the Clark contract, and that such assumption is inconsistent with the intention that the contract should provide for liquidated damages. Admitting, for the sake of the argument only, the very doubtful proposition that parol evidence would be admissible to show such intention, the complaint does not plead any such assumption. The only allegations even suggesting such a thing are found in paragraph VIII thereof, and they stop far short of raising the legal issue. Reduced to plain language, they state only that defendants knew of the Clark contract, that the payments under the Weatherford contract were made to correspond with those of the Clark contract,

and defendants agreed the payments made by them should be paid to the Clarks, and that they knew, if they did not make their payments on the Weatherford contract, the Clarks would forfeit plaintiffs' contract with them. Nowhere is there any specific statement that defendants agreed to assume plaintiffs' indebtedness to the Clarks, and the matters set forth in the complaint do not raise any presumption of law there was such an assumption.

The mere knowledge by A that B relies on certain payments to be made by A to B to settle the latter's indebtedness to C does not create a personal liability on A's part to pay the debt to C. Nor does the additional fact that A agrees his payments shall be made the same in time and amount as B's payments to C and turned directly over to C alter the legal situation. Before a man can be held to answer for the debt of another, there must be an explicit agreement on his part to do so, or else conduct from which the law implies such a promise. 32 Cyc. 34.

The facts set forth in the complaint do not, in our opinion, imply such a promise, and there certainly is no allegation of an express one. There being no assumption by defendants of any personal responsibility of plaintiff's debt to the Clarks, the Clark contract or any liability of plaintiffs thereunder cannot be considered, in passing on the intentions of the parties under the Weatherford contract.

But even if defendants did agree to assume personal liability for the Clark contract, they merely stepped into the shoes of the Adams and were bound for no more than the latter. The Clark contract was breached July 22nd, 1922, and thirty days thereafter the Clarks had their choice of the three remedies we have hereinbefore set out as available to the Adams for breach of the Weatherford contract. Like the Adams, they chose not to stand on the contract

and enforce it, or to rescind and restore the *status quo,* but to terminate the agreement and recover damages.

The contract provides they may, upon such election, foreclose the $12,000 mortgage, "as in said mortgage provided." What is provided therein? The condition of the mortgage is

"If the mortgagors shall pay . . . the sum of $12,000 . . . according to the terms and conditions of a certain agreement, . . . then this mortgage shall be null and void."

In other words, it was security for the debt of $12,000, as set forth in the Clark contract.

If, on default by the Adams, the Clarks had elected to continue the agreement and enforce the debt created thereby, undoubtedly they could have resorted to the security of the Adams land covered by the mortgage. They, however, declared the agreement at an end and retook their land, retaining the amount already paid. Under no conditions could they then recover any balance due on the purchase price. That obligation was completely wiped out, and there was substituted therefor a liability for damages, either liquidated or unliquidated, as the case might be.

A mortgage is always given to secure the performance of an obligation and, under our lien theory, falls when the obligation is at an end. *Wanzer* v. *Cary,* 76 N. Y. 526; *Eveland* v. *Wheeler,* 37 N. Y. 244; 46 C. J. 785.

Nor can its benefits inure to any other obligation than the one provided by its terms, even though the later obligation may have arisen through a breach of the former. If, in order to secure the one right, a party waives the other, necessarily, the mortgage securing the latter is waived, too. The Clarks having expressly waived the balance of their purchase price, the mortgage, which by its terms secured that only, was necessarily waived also. Their only remedy, as

elected by themselves, was to recover what damages were legally due them, without reference to the mortgage, and by the terms of their contract they have limited themselves to the payments already made as liquidated damages. Such is the plain and unambiguous language of the contract, and, even though the Weatherfords assumed it, there was no further liability to the Clarks from the Adams, and therefore from them.

For the foregoing reasons, the lower court should have sustained the general demurrer to the complaint. The judgment is reversed and the cause is remanded, with instructions to sustain the general demurrer and for such further proceedings as may seem proper.

McALISTER, C. J., and ROSS, J., concur.