In re Lynn B. JANIS and Marilyn J. Janis, husband and wife, Debtors.

Victoria DRUMMOND,
Trustee, Plaintiff,

v.

Lynn B. JANIS and Marilyn J. Janis, husband and wife; First Hawaiian Bank, a banking association; William F. Callejo, Trustee; Association of Apartment Owners of Keauhou Akahi, Defendants.

Bankruptcy No. B–88–7013–YUM–SSC.
Adv. No. 89–346.

United States Bankruptcy Court,
D. Arizona.

Jan. 4, 1991.

Victoria C. Drummond, Phoenix, Ariz., Trustee.

Jim D. Smith, Yuma, Ariz., for trustee.

Elizabeth C. Amorosi, Myers & Barnes, P.C., Phoenix, Ariz., for Callejo.

## MEMORANDUM DECISION AND ORDER

### PRELIMINARY STATEMENT

SARAH SHARER CURLEY, Bankruptcy Judge.

This matter comes before the Court on a Motion for Summary Judgment filed by

Defendant William F. Callejo ("Callejo") on March 5, 1990.

A Response was filed on April 5, 1990 by the Trustee in Bankruptcy of Lynn B. Janis and Marilyn J. Janis, the Debtors. On April 23, 1990, Callejo filed a Reply. Oral argument on the Motion for Summary Judgment was held on July 23, 1990. At the time of the Hearing, the Court discussed the case law preliminarily. Counsel for Callejo requested that she be able to file a supplemental memorandum on the conflicts of law issue. The Court set August 24, 1990 as the date certain for the filing of simultaneous supplemental memoranda by Callejo and the Trustee. Both parties timely complied.

On September 17, 1990, this Court rendered its decision on the record on the Callejo Motion for Summary Judgment. This Memorandum Decision and Order expands upon, and changes in part, this Court's Decision on the Record. Therefore, this Memorandum Decision shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. To the extent that there are any inconsistencies between this Memorandum Decision and this Court's prior oral ruling, this Memorandum Decision shall control. This is a "core" proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334 and 157.

## FACTUAL STATEMENT

On October 1, 1979, Morwest Real Estate and Development Ltd. ("Morwest") obtained a loan in the amount of $1,400,000 and executed a Real Estate Lien Note ("Wrap Note") in favor of Callejo and William Dana Graue ("Graue"). The Wrap Note included payments to Callejo and Graue, as well as payments on the underlying promissory notes that were in existence prior to the transaction between Morwest and Callejo and Graue. Therefore, the Wrap Note "wrapped" or included the underlying indebtedness. The Wrap Note

was secured by a Deed of Trust on real property in Texas.[1]

On July 30, 1980, Lynn B. Janis ("Debtor" or "Mr. Janis") executed a personal guaranty ("Guaranty") concerning the Wrap Note. As indicated, each payment on the Wrap Note also included payments on the underlying promissory notes included in the Wrap Note. Therefore, a portion of the payment on the Wrap Note also was paid to the owner and holder of the Wrap Note. Mr. Janis guaranteed only payment of the *equity portion* of the Wrap Note. The equity portion was computed by taking the present balance of the Wrap Note (the sum of $1,388,565.09) minus the unpaid balance on the underlying promissory notes. The equity balance or equity portion was the amount of $487,940.35.[2] *Marilyn Janis*, his wife and the other Debtor herein ("Debtor" or "Ms. Janis"), did *not* execute the Guaranty. Moreover, the Guaranty did not designate the law of any jurisdiction to be followed in the interpretation or enforcement of any provision therein.

On May 27, 1986, Morwest decided to sell the Texas real property. Therefore, the parties entered into a *Tri–Party Agreement* ("Agreement").[3] The Agreement refers to the Guaranty executed *only* by Mr. Janis and a R.C. Breakell. The Agreement modifies the Guaranty. For instance, Mr. Janis agrees that his Guaranty shall not be released even though the Texas real property is being sold. The Agreement provides that to secure Callejo's indebtedness, Mr. Janis shall grant Callejo a second mortgage lien on the Hawaiian condominium. The Agreement further provides that the Second Mortgage is in effect only during the period of the rehabilitation of the Texas real property. The Agreement contemplated that the second mortgage lien, *after* rehabilitation of the Texas real property, would be released. This Agreement stated that it was to be interpreted according to the laws of the State of Texas. Mr. Janis

---

**1.** See Exhibits A and B in Callejo's Motion for Summary Judgment.

**2.** Exhibit C in Defendant's Motion for Summary Judgment.

**3.** Exhibit D in Defendant's Motion for Summary Judgment.

signed the Agreement as *Guarantor.* Ms. Janis was not a signatory to the Agreement.

On May 24, 1986, a Mortgage was executed by Mr. Janis and Ms. Janis ("Mortgage") concerning the Hawaiian condominium.[4] To fulfill the terms of the Agreement, which only referred to the debt created by the Guarantor Mr. Janis, the Mortgage was executed. The Mortgage was to be construed in accordance with the laws of the State of Hawaii; it was executed in Maricopa County, Arizona; and it was recorded on November 16, 1986 in Hawaii. The Mortgage, when recorded, created a second mortgage lien on the Hawaiian condominium.

On October 12, 1987, a default occurred under the Wrap Note.

On July 5, 1988, the Texas real property was sold, which resulted in a deficiency judgment and a demand on Mr. Janis, the Guarantor, for payment of the deficiency judgment.

On September 8, 1988 a Chapter 7 bankruptcy petition was filed by the Janises in Arizona, and a Trustee in Bankruptcy was appointed. The Hawaiian condominium was part of the bankruptcy estate.

On September 13, 1988 a default judgment was entered against the Janises in Texas on the Guaranty. The judgment sought, *inter alia,* to foreclose the lien on the property in Hawaii.

On May 15, 1989 the Trustee filed a complaint in the United States Bankruptcy Court, District of Arizona, seeking authority to sell the Hawaiian property. The Complaint also disputed the validity of Callejo's lien on the Hawaiian property. This Court granted the Trustee's request to sell the Hawaiian property, with the liens to attach to the proceeds.

On August 31, 1989, the sale closed. Founder's Title Co. is still holding $25,-302.82 in escrow until this Court can determine the validity of the Callejo lien. The first lien holder on the Hawaiian property was paid in full.

On September 18, 1989, the Hawaiian Court entered a default judgment in favor of Callejo. The Hawaiian Court included in the default judgment a finding that the second mortgage lien of Callejo created by the Mortgage on the Hawaiian condominium could be foreclosed.

## LEGAL ISSUES

I. Whether the judgments obtained in the State Courts of Texas and Hawaii are void.

II. Whether the Guaranty executed by Mr. Lynn Janis is valid and enforceable. An analysis of conflicts of law principles is necessary to determine this issue.

III. If the Guaranty is not valid as to the Janises and their marital community, whether the Mortgage of Callejo is nevertheless valid and enforceable and creates a second mortgage lien on the Hawaiian condominium.

## DISCUSSION

■ The Court may grant a Motion for Summary Judgment if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, at 2512, 91 L.Ed.2d 202 (1986).

■ The Court is empowered to enter judgment for a nonmoving party if the record so dictates. *Brandon v. Board of Education of Guilderland Central School District,* 487 F.Supp. 1219 (N.D.N.Y.1980), *aff'd,* 635 F.2d 971 (2d Cir.1980), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981), *reh'g denied,* 455 U.S. 983, 102 S.Ct. 1493, 71 L.Ed.2d 694 (1982); *State Farm Mutual Automobile Ins. Co. v. Clark,* 397 F.Supp. 745 (D. Alaska 1975) (where relief in favor of nonmoving party is indicated, it is appropriate to grant summary judgment in favor of the party opposing a summary judgment motion without the necessity for a normal cross motion).

---

**4.** Exhibit E in the Defendant's Motion for Summary Judgment.

## I.

In the Ninth Circuit, actions taken in violation of the automatic stay are not void *ab initio* only voidable. *Matter of Roach*, 660 F.2d 1316 (9th Cir.1981); *In re Brooks*, 79 B.R. 479 (Bankr. 9th Cir.1987); *In re Schwartz*, 119 B.R. 207 (Bankr. 9th Cir.1990).

In *In re Sambo's Restaurants, Inc.*, 754 F.2d 811 (9th Cir.1985), the Ninth Circuit applied a flexible approach to determine whether certain actions were voidable. In *Sambo's* a party had commenced a wrongful death action without knowledge that a bankruptcy petition had been filed. The party then attempted to file a proof of claim in the bankruptcy proceeding, which the Bankruptcy Court refused to permit. The Ninth Circuit determined that although the filing of the complaint was in violation of the automatic stay, the complaint could nevertheless serve as an informal proof of claim in the bankruptcy proceedings.

The Ninth Circuit, however, has recently taken a strong position in vitiating actions taken in violation of the automatic stay which may have an impact on the bankruptcy estate.

In *In re Minoco Group of Companies, Ltd.*, 799 F.2d 517 (9th Cir.1986), the Ninth Circuit determined that the excess officers and directors liability policies were property of the Debtor's estate pursuant to 11 U.S.C. § 541(a).[5] As such this property interest was protected by the automatic stay from actions of creditors, specifically by 11 U.S.C. § 362(a)(3).[6] Therefore, the insurance companies providing this coverage to the debtor's officers and directors could not cancel these policies without first seeking a determination that the automatic stay was terminated. The decision of the Bankruptcy Court declaring the cancellation of the policies as being within the parameters of Section 362(a) and enjoining the insurance companies from effecting a cancellation was upheld. The Ninth Circuit stated:

> [The insurance companies contend] that [debtor] never demonstrated irreparable harm from cancellation. This point is meritless. The automatic stay comes into play upon the filing of a bankruptcy petition whether or not the debtor would suffer irreparable harm in the absence of the stay. [The insurance companies] also [make] myriad assertions concerning [debtor's] unstable corporate management and alleged misrepresentations by [debtor's] officers and directors. While these assertions might have supported a demonstration of "cause" for relief from the stay under section 362(d), [The insurance companies] never submitted a motion in bankruptcy court for relief from the stay and [did] not argue on appeal that [they were] entitled to such relief. Although [the insurance companies'] assertions may stand as monuments to a missed opportunity, they are irrelevant to our decision in this case: that cancellation of liability insurance policies is automatically stayed by section 362(a).

*Id.* at 520.

The effect of the *Minoco* decision was to avoid, or render a nullity, the Notice of Cancellation of insurance policies, which Notice was filed *postpetition* by the insurance companies without first vacating the automatic stay.

The Ninth Circuit determined in *In re Computer Communications, Inc.*, 824 F.2d 725 (9th Cir.1987) that a nondebtor party, which entered into a contract with the debtor prior to the filing of the debtor's bankruptcy petition concerning purchases of equipment and software from the debtor, could not unilaterally terminate the con-

---

**5.** 11 U.S.C. § 541(a) provides in pertinent part that:

 (a) The commencement of a case [under] section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

 (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case....

**6.** 11 U.S.C. § 362(a)(3) provides:

 any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

 . . .

tract postpetition without violating the automatic stay. The Ninth Circuit stated that even if the nondebtor could persuade the trial court that a *legal impediment* precluded the debtor's ability to assume the prepetition contract, the nondebtor could not terminate the contract without vacatur of the automatic stay. *Id.* at 729–730.

In this matter, Callejo has not only obtained a default judgment postpetition from a Texas Court, he has proceeded in clear violation of the automatic stay to file a complaint and obtain a default judgment and a judgment of foreclosure in Hawaii. Callejo may have obtained the default judgment in Texas without knowledge of the filing of the bankruptcy petition, but no effort was made subsequently to annul the automatic stay as to the obtainment of the judgment in either Texas or Hawaii. Moreover, Callejo has proceeded in a course of conduct that cannot be countenanced by this Court. With full knowledge that the condominium in Hawaii constituted property of the bankruptcy estate and with an adversary proceeding pending against Callejo challenging the validity of this lien, and without first vacating the automatic stay, Callejo commenced an action in Hawaii on the voidable Texas default judgment, and proceeded to obtain a second default judgment and judgment of foreclosure of the second mortgage lien on the Hawaiian condominium not only against the Janises, but also against the Bankruptcy Trustee.

Because of these violations of the automatic stay, this Court has no alternative other than to void the judgments obtained by Callejo in Texas and Hawaii.

## II.

■ Turning to the validity of the Guaranty Agreement executed by Mr. Janis, the Court notes there may be a conflict of law issue as to the Guaranty. The Guaranty Agreement does not contain a choice of law provision. Since the condominium is located in Hawaii, and the Janises reside in Arizona, the two States whose law may apply in the interpretation of the Guaranty are Hawaii and Arizona.[7] This Court notes that Federal Courts in Arizona apply the conflicts of law principles of the forum Federal District in determining initially such issues. *In re Residential Resources*, 98 B.R. 2 (Bankr.D.Ariz.1989). Arizona relies on the *Restatement (Second) of Conflicts* (hereinafter "Restatement Second Section ____") in determining the relative interests of the various States involved in such a conflicts controversy.[8]

■ There appears to be a conflict of law issue in this matter. Arizona, being a community property State, requires that both spouses execute a guaranty agreement for the agreement to be enforceable against the community property of the spouses. Ariz.Rev.Stat.Ann. ("A.R.S.") § 25–214 (Applicable text of the Statute is quoted *infra* in this section of the decision.). Since Hawaii is not a community property State, there is no similar requirement. The property of both spouses may be utilized to satisfy an indebtedness arising under a guaranty agreement although only one spouse has executed the agreement. *See, e.g., Harper v. Freeman*, 3 Haw.App. 1, 639 P.2d 1113, 1114 (1982).

Turning to the *Restatement (Second)*, Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

 (a) the place of contracting,

---

7. This Court has not considered the State of Texas in its analysis, although the Tri–Party Agreement was to be interpreted according to the law of the State of Texas, and the Agreement reflects the continuing validity of the Guaranty. The Guaranty is a separate document which must be interpreted—and considered on its own.

8. *See Bank of America v. J & S Auto Repairs,* 143 Ariz. 416, 694 P.2d 246 (1985).

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationally, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

The listing of the significant contacts may be summarized as follows:

*Arizona*

1. The Janises are presently residents of the State of Arizona, and have been residents of said State during all relevant time periods concerning the controversy with Callejo.

2. Arizona has a paramount interest in ensuring that the community created upon the marriage of two Arizona residents be bound for certain indebtedness only if both spouses execute certain documents specified in the Arizona Statutes.

3. The place of contracting and the place of negotiation of the Guaranty are not set forth in the record. The second lien mortgage on the Hawaiian condominium was clearly executed in the State of Arizona.

4. The performance of the underlying Guaranty Agreement was, in part, tied to the State of Arizona. Mr. Janis had the opportunity to pay the indebtedness connected with the Guaranty from his assets in the State of Arizona. If the indebtedness remained unpaid, Callejo could then proceed to foreclose on the second mortgage lien on the Hawaiian condominium.

*Hawaii*

1. The condominium which is the property subject to the second mortgage lien is located in Hawaii.

Based upon the foregoing analysis, this Court concludes that Arizona has the most

significant relationship to the parties and the transaction with respect to the Guaranty. Arizona law must, therefore, be used in interpreting the enforceability of the Guaranty. The law of Arizona concerning guaranty agreements generally provides, in pertinent part:

A.R.S. § 25–214. Management and Control.

\* \* \* \* \* \*

C. Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:

1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year.

2. Any transaction of guaranty, indemnity or suretyship.

In interpreting this statutory provision, the Arizona Court of Appeals, in *Consolidated Roofing & Supply v. Grimm*, 140 Ariz. 452, 682 P.2d 457 (Ct.App.1984), noted that Mr. Grimm had guaranteed the payment of an indebtedness of G & K Roofing to Consolidated Roofing. G & K Roofing then defaulted on the payment of the indebtedness to Consolidated Roofing. The trial court entered summary judgment against Mr. Grimm, finding that, although Ms. Grimm had failed to sign the guaranty agreement, the Grimm marital community had benefitted from said guaranty agreement so that there was sufficient "joinder" to bind the marital community. The Arizona Court of Appeals reversed that finding, first repeating the maxim that statutory language should be followed where plain and unambiguous, and applied the rule of the other jurisdictions that "to join" means to execute. 682 P.2d at 463. The Appellate Court concluded that "the plain meaning of A.R.S. § 25–214(C)(2) requires that both spouses must execute a guaranty in order to bind the community." *Id.* Thus, judgment on the guaranty could only be entered against the husband. *Accord, Arizona Feeds v. A & R ARGO, Inc.,* 136

Ariz. 420, 423, 666 P.2d 520, 523 (Ct.App. 1983) (State Supreme Court review denied, 1983) ("Even though the cattle business was for the benefit of the community, the wife's signature on the guaranty is necessary before the community can be bound.").

In the case at bar, as in *Grimm* it is undisputed that Ms. Janis did *not* sign the Guaranty. Moreover, the Mortgage concerning the Hawaiian condominium, which is the only relevant document executed by Ms. Marilyn Janis, does not incorporate the Guaranty; it only refers to it. Therefore, the Guaranty must stand alone as to its legal validity and enforceability.

The Tri–Party Agreement modifies the Guaranty in that other collateral (the condominium in Hawaii) was provided while the property in Texas was being rehabilitated, yet the Guaranty remains legally enforceable only against Mr. Janis. The Tri–Party Agreement was executed only by Mr. Janis.

■ Under the laws of the State of Arizona, this Court must conclude that the Guaranty is only effective as to Mr. Janis. To bind the marital community of the Janises, both Lynn Janis and Marilyn Janis were required to execute the Guaranty. Since only Mr. Janis executed the guaranty, the marital community of the Janises is generally not bound. Mr. Janis is bound to repay the indebtedness created by the Guaranty, but it should generally be from his sole and separate property.

■ The condominium owned by the Janises in Hawaii is considered community property pursuant to Arizona law. Since the Janises were Arizona residents at all relevant times, A.R.S. § 25–211 applies, which provides that "[a]ll property acquired by either husband or wife during marriage, except that which is acquired by gift, devise or descent, is the community property of the husband and wife."

The condominium may also be considered community property pursuant to Hawaiian law. The Court notes that prior to 1949, Hawaii was a community property jurisdiction. The 1945 *Haw.Sess.Laws*, Act 273, defined "community property" as "all property, both real and personal, ... acquired by the husband or the wife after marriage ... shall be community property of the husband and wife, and each shall be vested with an undivided one-half interest therein." *Bulgo v. Bulgo*, 41 Haw. 578, 580–81 (1957); *see also* Editor's note, prefatory to Part I, c. 510 (Community Property), Michie's *Haw.Rev.Stat.Ann.* (1988).[9]

To avoid divestiture of these long established property rights or interests, Hawaii still incorporates in its statutory scheme many provisions concerning community property. Hawaii has also adopted the Uniform Disposition of Community Property Rights at Death Act, codified as H.R.S. §§ 510–21 et seq. "[p]roperty acquired during marriage by a spouse of that marriage while domiciled in a jurisdiction under whose laws property could then be acquired as community property is presumed to have been acquired as or to have become, and remained, property to which this part applies ..." H.R.S. § 510–22(1) (1988). Of course, this presumption is not strictly applicable on its face, since neither Mr. Janis nor Ms. Janis has died; the Court simply notes that it is some evidence that Hawaii would consider the laws of another state applicable in determining the nature of the interest in the property.

Since the condominium of the Janises is their community property, this Court must determine whether this community property may be utilized to satisfy an obligation which is only valid as to Mr. Janis.

III.

■ Since the Guaranty is only valid or enforceable as to Mr. Janis, does this

9. The current codification is renumbered § 572–21, and provides that "[t]here is a rebuttable presumption that all property, both real and personal, acquired in the name of the husband or of the wife, without regard to the time of acquisition thereof, is the separate property of the spouse in the name of whom it has been acquired." Since the Hawaiian Condominium was acquired by *both* Mr. and Ms. Janis, the presumption afforded by § 572–21 would not apply in any event.

impact on the validity of the Mortgage? The answer is yes, in part. Under Arizona law, a mortgage is not a debt, but is merely security for payment of a debt. *Maine v. Clack*, 43 Ariz. 492, 33 P.2d 283 (1934) (voluntary release of mortgage does not necessarily release underlying debt); *accord, Weatherford v. Adams*, 31 Ariz. 187, 251 P. 453 (1926) (under Arizona's lien theory, a mortgage given to secure performance of an obligation fails when the obligation is terminated or no longer in existence); *Charter Gas Engine Co. v. Entrekin*, 30 Ariz. 341, 246 P. 1038 (1926) (mortgage in form of absolute deed is merely security agreement for payment of debt and is ancillary thereto; without a debt there is no mortgage). Thus, if the underlying indebtedness is invalid or void, the security therefor must necessarily fail as well.

■ The only other jurisdiction with a significant interest in the Mortgage, Hawaii, would not dictate a different result. Since the law of Hawaii is relevant in interpreting the Mortgage only, the Court notes that *Haw.Rev.Stat.* ("H.R.S.") § 506–1 provides in pertinent part that:

> (a) Every transfer of an interest in real property or fixtures made as security for the performance of another act or subject to defeasance upon the payment of an obligation, whether the transfer is made in trust or otherwise, is to be deemed a mortgage and shall create a lien *only as security* for the obligation and shall not be deemed to pass title.... [Emphasis added.]

The relevant provisions of H.R.S. § 506–8 state:

> [t]he mortgagee of real property or the record assignee of a mortgage interest shall provide to the mortgagor a release of mortgage upon full satisfaction of the mortgage and discharge of any debt secured thereby....

Therefore, Hawaii, like Arizona, is a lien theory State. The mortgage does not create an indebtedness; it merely serves as

security therefor. *Chierighino v. Bowers*, 2 Haw.App. 291, 631 P.2d 183 (1981).

■ Since the Mortgage, under either Arizona or Hawaiian law, cannot create an indebtedness, and is only valid if an underlying indebtedness exists, the invalidity of the Guaranty as to Ms. Janis impacts on the validity of the second mortgage lien as to the Hawaiian condominium. As previously stated, if an obligation is terminated, the mortgage that is given as security therefor is invalid. *Weatherford v. Adams*, 31 Ariz. 187, 251 P. 453 (1926); *cf. Chierighino v. Bowers*, 2 Haw.App. 291, 631 P.2d 183 (1981). Although there are no cases directly on point, if an obligation is deemed invalid or unenforceable, the security for such an obligation should also fail. Under Arizona law, the Guaranty has been determined to be unenforceable as to Ms. Janis. However, this Guaranty is the only obligation for which the Mortgage serves as security.

Under Arizona law, if the Mortgage were deemed valid as to Ms. Janis, the Statutory provision requiring both spouses to execute a guaranty agreement to bind the marital community would have no force and effect. The Arizona Statute, A.R.S. § 25–214, would be disregarded; the spouse would simply be asked to execute the Mortgage, and the Spouse would never have a clear understanding of the type of obligation (i.e. one of guaranty) for which the security was provided. The community property laws of Arizona should not be so easily circumvented. Therefore, the Mortgage should only be enforceable as to Mr. Janis' interest in the Condominium.

■ Under the law of Hawaii, the only other relevant law pertaining to the Mortgage, the Mortgage only serves as a lien. As previously stated, Hawaii still incorporates in its statutory scheme certain provisions that are applicable to community property. One provision, H.R.S. § 510–8(i), permits the wife and the husband to join in the mortgage or pledge of community property as security for the sale and separate indebtedness of the wife or the husband.[10]

---

10. H.R.S. § 510–8(i) provides that "[n]othing in this section shall prevent the wife or the hus-band from mortgaging or pledging her or his separate property or prevent the wife and the

However, Arizona does not have such a statute. Moreover, this matter is complicated by the fact that the community property is being pledged in support of a *partially invalid or unenforceable obligation.* This Court concludes that pursuant to the law of Hawaii, if the obligation is invalid or unenforceable in part, the Mortgage may not serve as security for that portion of the obligation which is invalid or unenforceable. Therefore, the law of Hawaii would also dictate that the Mortgage would only be enforceable as to Mr. Janis' interest in the Condominium.

The Court recognizes that its analysis may permit community property to be utilized in part to satisfy the sole and separate indebtedness of a spouse. This Court arrives at this conclusion under principles of equity. Frankly, there are no cases on point in either Arizona or Hawaii on the issue of whether a mortgage may be deemed valid if the underlying obligation is only enforceable in part. Since Ms. Janis did execute the Mortgage to create a second mortgage lien on the Hawaiian condominium, this Court should not determine the lien to be completely void or unenforceable. However, this Court must also recognize that to permit the lien to be foreclosed against the interest of Mr. Janis and Ms. Janis in the condominium would vitiate the controlling law in Arizona concerning the Guaranty. The solution is to permit only the interest of Mr. Janis in the condominium to be utilized to pay the obligation created under the Guaranty.

 Finally, Callejo argues that the Guaranty is somehow set forth in, or is a part of, the Mortgage. The argument is that because Ms. Janis executed the Mortgage, she impliedly agreed to, and adopted, the underlying Guaranty, and the Mortgage may be enforced as to her interest in the condominium. It is clear to this Court that there was only a reference to the Tri–Party Agreement and the Guaranty in the Mortgage. The Guaranty is not set forth in the Mortgage; that is, the document is not a guaranty *and* a mortgage.

In fact, given the brevity of the language utilized as to the Guaranty, it is unclear to this Court whether Ms. Janis ever understood the type of obligation for which the Mortgage was given as security.

Moreover, under the law of either Hawaii or Arizona, a mortgage does *not* constitute an obligation; it is only a lien. Therefore, even if Ms. Janis executed a Mortgage which were more descriptive as to the obligation secured by the Mortgage, the Mortgage could not serve as the guaranty obligation. The Mortgage is still enforceable only as to Mr. Janis' interest in the condominium.

The Hawaiian condominium has been sold by the Trustee in Bankruptcy, with the sum of $25,302.82 in net sale proceeds being held in escrow. All liens attached to the proceeds at the time of the sale, with this Court to determine subsequently the validity of the Callejo lien.

This Court has now determined that the Callejo lien is only valid in part. Any contrary determination by default judgment in the Courts of Texas and Hawaii has been rendered a nullity, since any default judgment was obtained in violation of the automatic stay imposed pursuant to 11 U.S.C. § 362.

The Callejo lien has attached to the net sale proceeds held by the Trustee in Bankruptcy, but it is only valid as to Mr. Janis' interest in the condominium. Since Mr. Janis had an undivided one-half interest in the condominium at the time the Callejo lien attached, Callejo is entitled to one-half of the net sale proceeds or the sum of $12,651.41, plus one-half of the accrued interest, if any, on the sale proceeds.

Based upon the foregoing,

IT IS ORDERED that a judgment shall be entered in favor of the Trustee in Bankruptcy declaring the default judgments obtained in the States of Texas and Hawaii to be void, that the Guaranty executed by Mr. Janis be declared invalid and unenforceable as to Ms. Janis, and that the Mortgage on the Hawaiian condominium be declared in-

---

husband from joining in a mortgage or pledge of community property as security for any in-

debtedness whether of the wife or of the husband or both."

valid and unenforceable in part. The Callejo lien has attached to Mr. Janis' interest in the condominium. Callejo shall be entitled to receive one-half of the net sale proceeds currently held in escrow from the sale of the Hawaiian Condominium. Counsel for the Trustee shall submit an appropriate form of judgment.